530 So.2d 168 (1988)
Rosetta MINER
v.
A. BERTASI, Jr. and Anthony P. Bertasi, Sr.
No. 57765.
Supreme Court of Mississippi.
August 10, 1988.
Rehearing Denied September 21, 1988.
*169 Peggy A. Jones, Warren & Jones, Holly Springs, for appellant.
John Booth Farese, John B. Riemenschneider, Farese, Farese & Farese, Ashland, for appellees.
Before ROY NOBLE LEE, C.J., and ANDERSON and GRIFFIN, JJ.
GRIFFIN, Justice, for the Court:
This case, involving undue influence, comes to the Court from the Chancery Court of Marshall County, which dismissed the suit after a trial. We affirm.
On February 7, 1980, Rosa Bertasi, age 91, fell at home, breaking her hip. She was hospitalized, and later taken to a nursing home. Her husband, Adelino Bertasi, Sr., age 92, went to stay with his daughter, Rosetta Miner. Although he had recently suffered a stroke, the witnesses all agreed that Bertasi, Sr. was "very sharp" and "mentally alert to the last."
After a month, Bertasi, Sr. moved in with his son, Anthony, who had offered to see about him. Upon arrival, Bertasi, Sr. seemed "upset," telling Anthony that "Rosetta wanted me to give her a piece of my farm." According to Anthony, Bertasi, Sr. asked him to contact John Masserano, Anthony's son-in-law and an attorney. Masserano then spent approximately fifteen to twenty minutes with Bertasi, Sr. discussing the farm. At trial, Messerano testified that although Adelino, Sr. "wasn't positive" about the farm's disposition during this meeting, it was clear that he would not give it to all four children. Afterwards, Adelino, Sr. commented that he would speak to his other son, Adelino, Jr.
That evening, Anthony, Adelino, Jr., their wives, and Adelino, Sr. spoke about the farm. According to Adelino, Jr., Adelino, Sr. announced that he wanted his two sons to have the farm. Adelino, Jr. asked his dad to sell the farm instead, remarking, "[Y]ou know we'll take care of you anyway." Adelino, Sr. replied, "Oh, that's the way I want it."
Soon afterwards, Anthony or his wife called Masserano, telling him to prepare a deed. Upon his arrival, Masserano read *170 the deed to Adelino, Sr., who responded, "Where do you want me to sign?" Anthony, who was also present, then gave Adelino, Sr. ten dollars, five dollars from Anthony and five dollars from Adelino, Jr., who was not present.
On December 29, 1982, Adelino Bertasi, Sr. died. After the funeral, Miner was "shocked" to learn that her dad had conveyed the farm to her brothers. Previously, Adelino, Sr. had divided real estate holdings in Memphis equally, though Adelino, Jr. received the more valuable acreage on which his business stood. Also, under Bertasi, Sr.'s will, executed on August 21, 1962, he gave his property to his four children "in equal parts." Parenthetically, Elna Bell, Bertasi, Sr.'s fourth child, is not a party to the suit.

I.
Since 1953, when Adelino, Sr. retired, Adelino, Jr. and Anthony had paid their parents' bills. Anthony had purchased their television, stove, and refrigerator, "whatever they needed," and took Adelino, Sr. to the doctor. At the time of the conveyance, Adelino, Sr. also lived with Anthony.
Moreover, Anthony actively participated in the discussions, leading to the conveyance. At Adelino, Sr.'s request, Anthony called Masserano to talk about the farm and later to draft the deed. When Adelino, Sr. wanted to speak with his other son about the farm, Anthony called him. Anthony was also present when Masserano and his dad met to talk about the farm, when Adelino, Jr. and his dad met to talk about the farm, and later when his dad executed the deed. Afterwards, Anthony's accountant prepared a gift tax return, which Anthony presented to Adelino, Sr. for his signature.
Based on this evidence, the chancellor found no confidential or fiduciary relationship between Adelino, Sr. and Anthony, since such a relationship involves the "transaction of some business," characterized as "attorney-client, guardian-ward, trustee-beneficiary, executor, and so on," not present here.
In Wofford v. Wofford, 244 Miss. 442, 456, 142 So.2d 188, 194 (1962), the Court defined a fiduciary relationship as a "relation in which confidence was reposed by one, and the influence which naturally grows out of such confidence was possessed by the other." See also, Glover v. Glover, 367 So.2d 167, 176 (Miss. 1979); Ham v. Ham, 146 Miss. 161, 173, 110 So. 583, 584 (1926). Consequently, fiduciary or confidential relationships may arise in a legal, moral, domestic, or personal context, where there appears "on the one side an overmastering influence or, on the other, weakness, dependence, or trust, justifiably reposed." Estate of Haney, 516 So.2d 1359, 1361 (Miss. 1987); Mullins v. Ratcliff, 515 So.2d 1183, 1191 (Miss. 1987); In re Estate of Bilello, 317 So.2d 916, 917 (Miss. 1975). See also, Norris v. Norris, 498 So.2d 809, 812-13 (Miss. 1986); Will of Polk, 497 So.2d 815, 817 (Miss. 1986); Murray v. Laird, 446 So.2d 575, 578 (Miss. 1984); Hendricks v. James, 421 So.2d 1031, 1041 (Miss. 1982).
In Thomas v. Jolly, 251 Miss. 448, 454-5, 170 So.2d 16, 19 (1964), this Court stated,
A deed from a parent to a child alone and of itself raises no presumption of undue influence since, in the absence of evidence to the contrary, the parent is presumably the dominant party. This is true even though the parent is aged, or aged and infirm. Circumstances may show, however, such a confidential relationship in which the child is the dominant party that a presumption of undue influence arises.
See also, Glover, 367 So.2d at 176.
In this case, the circumstances supporting the presumption of undue influence extend far beyond Adelino's age and ill health. Since 1953, Anthony had seen to his parents' financial needs. When Adelino, Sr. left Rosetta's home, Anthony became responsible for his dad's physical needs as well. In addition, Adelino, Sr. relied upon Anthony to contact Masserano and Adelino, Jr. about the conveyance, and allowed him to attend every discussion on the subject.
*171 The chancellor seemed to look for a confidential relationship, arising solely within a legal context. Finding none, he found no presumption of undue influence. Yet, due to Adelino, Sr.'s financial and physical dependence upon Anthony it is clear that the presumption should have arisen.

II.
The chancellor also found that Adelino Bertasi, Sr. enjoyed a confidential relationship with Adelino Bertasi, Jr. Specifically, Adelino, Sr. consulted with his son about the conveyance and allowed him to handle the monthly Social Security check. Nevertheless, the chancellor held that there was no presumption of undue influence, since Adelino, Jr. was neither a party to any "transaction" involving Adelino, Sr., as Adelino, Jr. was not present for the deed's execution, nor was he a party to any "suspicious circumstances."
Yet it is clear that Adelino, Jr. was a party to a transaction, since he had paid five dollars for the deed. Moreover, Adelino, Jr.'s absence at the time of the deed's execution does not relate to the presumption, but to its rebuttal. Murray, 446 So.2d 575, 578 (Miss. 1984).
Finally, although this Court has required a confidential relationship and suspicious circumstances in order to raise the presumption of undue influence in wills, Estate of Lawler v. Weston, 451 So.2d 739, 741 (Miss. 1984); Davion v. Williams, 352 So.2d 804, 805 (Miss. 1977); In re Estate of Bilello, 317 So.2d 916, 918 (Miss. 1975), a confidential relationship alone is sufficient to raise the presumption with gifts inter vivos. Estate of McRae, 522 So.2d 731, 737 (Miss. 1988); In re Will of Moses, 227 So.2d 829, 835 (Miss. 1969); Croft v. Alder, 237 Miss. 713, 723-4, 115 So.2d 683, 686 (1959).

III.
Finally, Miner contends not only that the presumption of undue influence arises, but also that Adelino, Jr. and Anthony fail to rebut it. In Murray v. Laird, 446 So.2d 575, 578 (Miss. 1984), the Court stated,
[W]hen the circumstances give rise to a presumption of undue influence, then the burden of going forward with the proof shifts to the grantee/beneficiary to prove by clear and convincing evidence of:
(1) Good faith on the part of the grantee/beneficiary;
(2) Grantor's full knowledge and deliberation of his actions and their consequences; and
(3) Advice of (a) competent person, (b) disconnected from the grantee and (c) devoted wholly to the grantor/testator's interest.
See also, Costello v. Hall, 506 So.2d 293, 296 (Miss. 1987); Kelly v. Shoemake, 460 So.2d 811, 820 (Miss. 1984). In Mullins v. Ratcliff, 515 So.2d 1183, 1193 (Miss. 1987), the Court redefined the third prong in Murray, holding that the "grantee/beneficiary [must] prove by clear and convincing evidence that the grantor/testator exhibited independent consent and action," though not necessarily independent advice.
In Murray, the Court listed several considerations significant to overcome the presumption of undue influence. For the first prong, "good faith," there are five factors: 1) identity of the initiating party in seeking preparation of the instrument, 2) place of the instrument's execution and identity of those present, 3) consideration and fee, if any, 4) identity of the individual paying the fee, and 5) secrecy given the instrument's execution. Murray, 446 So.2d at 578. See also, Mullins, 515 So.2d at 1195; Harris v. Sellers, 446 So.2d 1012, 1015 (Miss. 1984).
It is undisputed that Adelino, Sr. initiated discussion of the deed, asking Anthony to call his son-in-law, an attorney, for legal advice. At their meeting, Adelino, Sr. indicated to Masserano that he would not give the farm to all of his children, later advising his sons, over Adelino, Jr.'s objections, that he would deed the farm to them. Also, Adelino, Sr. executed the deed before Anthony and Masserano in Anthony's home. As a member of the family, Masserano charged no fee. Finally, although Miner testified that she was unaware of the conveyance, there is no evidence that it was a secret.
*172 Murray also lists several factors to determine the grantor's knowledge: 1) his awareness of his assets and their value, 2) his awareness of the "natural inheritors of his bounty" under descent and distribution or a prior will, 3) whether non-relative beneficiaries would be included or excluded, and 4) his dependence upon the grantee as well as his susceptibility to influence. Murray, 446 So.2d at 579. See also, Mullins, 515 So.2d at 1195; Harris, 446 So.2d at 1015.
There is no doubt that Adelino, Sr. was "very sharp" mentally, aware of his family and finances. Likewise, it is clear that Adelino, Sr. was strong-willed, and not susceptible to outside influence. In particular, although Bertasi, Sr. lived with Anthony at the time of the conveyance, he also lived at various times with Rosetta, Adelino, Jr. and Elna; therefore, he was not solely dependent upon the grantees.
Lastly, Mullins requires clear and convincing evidence of independent consent and action. As noted above, the evidence is without contradiction that Adelino, Sr. initiated contact with Masserano, indicating that he would not give the farm to all of his children. Later, he dismissed objections to the conveyance by Adelino, Jr., telling him, "That's the way I want it." Significantly, there is abundant evidence that Adelino, Sr. was mentally sharp and strong-willed throughout this period. See, Blissard v. White, 515 So.2d 1196, 1200 (Miss. 1987).
Consistent with the above, although the presumption of undue influence was present due to the grantee's confidential relationship with the grantor, there was clear and convincing evidence in rebuttal to negate the presumption. As a result, this Court affirms, since the error below does not affect the ultimate judgment. See, Melton Hardware Co. v. Heidelberg, 91 Miss. 598, 607, 44 So. 857, 859 (1907).
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.