592 So.2d 52 (1991)
In the Matter of the Last WILL and Testament Of J.L. McCAFFREY, Sr., Deceased,
v.
Davis T. FORTENBERRY, Executor.
No. 07-CA-59358.
Supreme Court of Mississippi.
December 11, 1991.
*53 Jolly W. Matthews, III, Ingram, Matthews & Stroud, Hattiesburg, for appellant.
Larry O. Norris, Hattiesburg, for appellee.
EN BANC.
DAN M. LEE, Presiding Justice, for the Court:
This is an appeal from the Forrest County Chancery Court wherein the chancellor *54 accepted the final accounting of the estate of J.L. McCaffrey, Sr. The appellants are the beneficiaries of Mrs. Elma B. McCaffrey's will, the now deceased widow of J.L. McCaffrey, Sr.
Mr. J.L. McCaffrey, Sr., died testate on May 2, 1977, leaving his wife, Elma B. McCaffrey, as the sole beneficiary of his estate. Mr. Davis T. Fortenberry was Mr. McCaffrey's son-in-law, and he served as Mr. McCaffrey's personal attorney for several years prior to his marriage to the McCaffrey's eldest daughter. Furthermore, Mr. Fortenberry drafted J.L. McCaffrey's last will in which he was named as the executor of McCaffrey's estate. This will waived the statutory requirement of posting an executor's bond and the filing of annual accountings. Nevertheless, Fortenberry posted a bond in the amount of $50,000.00 and filed a First Annual Account one year after the estate was opened.
Mrs. Elma B. McCaffrey died on September 26, 1986, almost nine years following the death of her husband. Mr. Fortenberry was also named as the executor in her last will which he also drafted. After a court challenge, the details of which are not specified in this record, Mr. Fortenberry was removed as the executor of Mrs. McCaffrey's estate, and her son, J.L. McCaffrey, Jr., was appointed as administrator d.b.n.c.t.a.
As the administrator d.b.n.c.t.a. of his mother's estate, McCaffrey, Jr., filed a petition asking the court to order Fortenberry to file a final accounting and an inventory in the estate of J.L. McCaffrey, Sr. The court issued the order, and in May of 1987, ten years after the death of Mr. McCaffrey, Davis T. Fortenberry filed a final account and an inventory. J.L. McCaffrey, Jr., promptly filed a Response Objecting to the Final Account in which he asked the court to disallow all vouchers for attorney's fees in the amount of $90,360.00 which represented the sum of unapproved fees that Fortenberry withdrew from the estate over a seven and a half (7 1/2) year period. Subsequent to the objection filed by McCaffrey, Jr., Mr. Fortenberry filed an answer and three corrections and amendments to this final accounting.
The matter was set for trial on the objections to the final accounting and was heard in the Forrest County Chancery Court on October 5-6, 1987. Chancellor Howard L. Patterson, Jr. entered an order accepting Fortenberry's final accounting and overruled all objections filed by McCaffrey, Jr., including the request to disallow $90,360.00 in unapproved attorney's fees. Chancellor Patterson's order also included an authorization for Fortenberry to distribute the assets and close the estate of J.L. McCaffrey, Sr., almost eleven years after his death. Mr. J.L. McCaffrey, Jr., along with other children of J.L. and Elma B. McCaffrey, who are the beneficiaries under Mrs. Elma McCaffrey's will, have pursued this appeal from this decision by Chancellor Patterson which they deem to be adverse to their interests.
After a thorough review of the record, briefs of the parties and arguments before this Court, we affirm that part of the chancellor's order accepting the final accounting, as amended, by the executor in the estate of J.L. McCaffrey, Sr. However, we reverse as to the chancellor's failure to surcharge Davis T. Fortenberry $90,360.00, an amount which represents the unauthorized attorney's fees which Fortenberry withdrew from the estate without prior court approval.
The appellants have assigned thirteen errors for our review which are as follows.
I. Was the presumption of undue influence by Davis T. Fortenberry, executor and attorney, over Mrs. Elma B. McCaffrey, rebutted?
II. Should attorney's fees of $32,500.00, which were authorized by the Chancery Court, be surcharged with interest to Davis T. Fortenberry for his failure to follow the Rules and Statutes as required and for his maladministration of the estate?
III. Should $90,360.00 that Fortenberry took from the estate as "partial attorney's fees," which were not authorized by the court, be surcharged with interest to him?

*55 IV. Whether Fortenberry's failure to marshal and account for the rental income belonging to the estate constituted maladministration.
V. Whether Fortenberry's failure to collect, inventory and account for notes belonging to the estate constituted maladministration.
VI. Whether Fortenberry's failure to obtain court approval for attorney's fees paid out of the estate for other attorneys constituted maladministration.
VII. Whether Fortenberry's failure to use the proceeds of court authorized sales of real property to pay debts, taxes and administrative expenses of the estate constituted maladministration.
VIII. Whether Fortenberry's failure to obtain court authority for the sale of real property of the estate constituted maladministration.
IX. Whether Fortenberry's failure to file annual accountings for more than nine years constituted maladministration.
X. Whether Fortenberry's failure to file an inventory of assets of the estate for a period of more than ten years constituted maladministration.
XI. Whether Fortenberry's failure to marshal and protect the assets of the estate constituted maladministration.
XII. Whether Fortenberry's failure to file estate fiduciary income tax returns constituted maladministration.
XIII. Whether Fortenberry's receipt of a diamond stick pin and a shotgun belonging to the estate constituted a transfer which should be voided and the property returned to the estate.
We conclude that all issues raised by the appellants can be consolidated and addressed more effectively under three categories.
I. CONFIDENTIAL RELATIONSHIP AND THE PRESUMPTION OF UNDUE INFLUENCE.
II. THE PAYMENT OF UNAPPROVED ATTORNEY'S FEES BY THE EXECUTOR OF AN ESTATE.
III. THE EXECUTOR'S MALADMINISTRATION OF THE ESTATE FOR HIS FAILURE TO FOLLOW CHANCERY COURT RULES AND STATE LAW.

FACTS
The grounds for this suit rest with what the appellants perceive as the maladministration by Davis T. Fortenberry of the estate of J.L. McCaffrey, Sr. Mr. Fortenberry was Mr. McCaffrey's son-in-law, and he was both the executor and the attorney for Mr. McCaffrey's estate. Furthermore, it was Fortenberry who drafted Mr. McCaffrey's will. Likewise, Mr. Fortenberry drafted Mrs. McCaffrey's will and was also named as the executor in her will.
Mr. Fortenberry served as Mr. McCaffrey's personal attorney for several years prior to his marriage to the McCaffrey's daughter, and he was more familiar with Mr. McCaffrey's business than anyone else. The McCaffrey estate consisted of more than eighty parcels of rental property, a grocery store, a mobile home park, stocks and bonds, notes and accounts receivable and various other assets which earned investment income for the estate. These assets were scattered over south Mississippi in several counties but were located primarily in Forrest County in the Hattiesburg area. At the time of Mr. McCaffrey's death in 1977 and for several years following his death, the estate was experiencing serious cash flow problems. The uncontradicted testimony was that the estate was approximately $700,000.00 in debt in the 1977-1978 time period. Fortenberry testified that management of the estate was a full time job and that it demanded ninety percent of his time during the first six years.
Mrs. Elma B. McCaffrey was the sole beneficiary of her husband's estate. Although Mrs. McCaffrey had little formal education, she was described as an astute businesswoman who was very intelligent. During the last four to five years of her life, Mrs. McCaffrey was hospitalized several times. In the summer of 1986, her condition was considered terminal. For the last three to four months of her life, Mrs. McCaffrey lived with her daughter and son-in-law, the Fortenberrys, and they provided *56 around-the-clock care for her. However, she was very rational up until the last nine days of her life.
Although Mr. McCaffrey's will waived an executor's bond, Fortenberry nonetheless posted a bond in the amount of $50,000.00 when he filed the petition to probate. Additionally, Mr. McCaffrey's will waived any requirement of an accounting by his executor. However, Fortenberry filed a "First Annual Account" in May of 1978. Mr. Fortenberry stated that after he compiled the first accounting, he presented it to Mrs. McCaffrey for her review and signature. She inquired into the need for the report, and when she learned that the document would be a matter of public record, she asked Fortenberry not to file any further accountings. Mrs. McCaffrey was a private, secretive person and did not want her business to be a matter of public record. Suffice it to say that Fortenberry respected the wishes of his mother-in-law, and he filed no further accountings until he was required to file by court order nine years later in May of 1987. Fortenberry also filed an inventory when he was ordered to do so by the court in May of 1987.
Mr. Fortenberry began his administration of this large estate in the proper manner by filing a first annual accounting and seeking court approval for expenditures. The general docket sheets from the Forrest County Chancery Court reveal that Fortenberry was filing petitions for approval in numerous, routine matters throughout this nine year period between the deaths of Mr. and Mrs. McCaffrey. Fortenberry sought approval for authority to enter into leases; authority to settle an eminent domain action; various petitions to sell realty, and renew notes; petitions to assign and execute oil and mineral leases; petitions to enter into contracts for maintenance needs for the estate; authority to settle a doubtful claim; petitions to enter into a contract to buy real estate; petition to sell a travel trailer; petition to execute an easement; petition seeking authority to transfer stock; a release of surface rights; petition for authority to execute a deed; security agreement, etc.; a petition to pay an accountant's fee in November of 1987; and a petition to make a partial distribution of assets in November of 1986. The record also indicates that Mr. Fortenberry obtained court approval to employ counsel to represent the estate in a lawsuit in which Mr. McCaffrey was named as a defendant prior to his death. Fortenberry also sought and obtained court approval to expend funds related to the maintenance and upkeep of the estate's rental property and an authorization to pay certain federal and state taxes, title insurance and other miscellaneous debts.
As noted earlier, the estate was experiencing a severe cash flow shortage at the time of Mr. McCaffrey's death and for a few years thereafter. In March of 1983, Mr. Fortenberry sought and obtained court approval to obtain a bank loan for the estate from the South Mississippi Bank in the amount of $125,000.00. The loan proceeds were used to pay off old debts and creditors.
While Mr. Fortenberry was filing several petitions for court approval throughout this time, he made some glaring omissions in not obtaining court approval for some transactions. Mr. Fortenberry was acting both as executor and attorney for the estate. The appellants adamantly protest about non-approval for attorney's fees which Fortenberry paid to himself. In the decree approving the first annual account, the chancellor approved attorney's fees for $17,500.00 in May of 1978, and an additional $15,000.00 in attorney's fees was approved in a decree granting authority to expend funds in April of 1979. Thus, Mr. Fortenberry obtained court approval for attorney's fees in the amount of $32,500.00. However, beyond April of 1979, Fortenberry did not request or receive prior or contemporaneous court approval to pay himself any fees. Nonetheless, he proceeded to pay himself attorney's fees from the estate account on a periodic basis and in various amounts up until September of 1986. For the nine year period beginning in December of 1977 and ending in September of 1986, Fortenberry paid himself a total of $122,860.00 in fees, an average of $13,651.00 per year. This total amount of *57 $122,860.00 in fees includes the $32,500.00 in court approved fees, leaving a total of $90,360.00 in unapproved fees.
Mr. Fortenberry did not keep daily or weekly time records or any other documentation of the time that he worked on the estate. Fortenberry stated that on the weekend prior to trial in October of 1987, he reviewed his files on the estate and constructed time sheets which reflect a bare minimum of the time that he worked on the estate for the previous nine years. Over objection, Chancellor Patterson admitted these records into evidence. Fortenberry was able to recall, with the use of his files to refresh his memory, countless details regarding transactions that occurred up to ten years prior to October of 1987. Fortenberry's accounting of his time is very specific and detailed in many instances.
While Fortenberry did seek approval for one expenditure of funds to employ outside counsel in handling a lawsuit which was initiated before Mr. McCaffrey died, he also paid modest amounts without court approval to other attorneys who were working on other cases. For instance, in February of 1980, Fortenberry paid $250.00 to one attorney in a contract action that was against Mrs. McCaffrey and the estate as defendants. Ten thousand dollars was paid out of the estate account to settle this suit without court approval. In a second suit in federal court against Mrs. McCaffrey, individually, Fortenberry employed an attorney for $350.00 and paid $18,750.00 to settle this suit from the estate account. While there was no decree by the court authorizing this payment and settlement, Fortenberry maintains that Mrs. McCaffrey provided the estate with personal funds from which he paid this settlement and fee. In a third suit which was unapproved by the court, outside counsel was paid a fee of $325.00 in an insurance collection action. Either the estate or Mrs. McCaffrey was a plaintiff in this action, and the suit resulted in a recovery of approximately $2500.00 from Liberty Mutual Insurance Company for the estate. In a fourth suit in which there was no court approval, a law firm was paid an attorney's fee of $425.00 in a foreclosure action in 1982.
Although the McCaffrey estate owned over eighty rental properties, Mr. Fortenberry collected rental income from only one source, a grocery store in Ellisville, Mississippi. Mrs. McCaffrey, the sole beneficiary, collected most of the rental income for the estate, paid expenses from the rent that she collected and deposited the remainder into the executor's account. Mr. Fortenberry described the procedure regarding the collection of rental income as follows.
Q. Just answer my question and then you can explain. Did you ever take control of these assets and control of this rental income.
A. As far as the rents are concerned no. Not all of it was rental.
Q. Of that that was rental did you ever take control of the rents?
A. No.
Q. That that was in Mr. McCaffrey's name is all we're talking about now. You did not?
A. Well I did in this sense. Mrs. McCaffrey worked out an arrangement wherein she would collect it, pay the expenses, police the tenancy, and periodically, sometime one, sometime twice, sometimes three times a month, she or someone for her would deposit to the Executor's account by triplicate deposit slip an amount of money, varying from $800.00 to $5,000.00 or $6,000.00. She would retain one deposit slip. She would send me another, and the third one, of course, went to the bank.
At one point in the administration of the estate, thirty-nine parcels of realty were in jeopardy of a tax sale because the estate was without funds to pay the taxes when due. The delinquencies occurred in the early years of the estate when it was experiencing a cash flow problem. Fortenberry testified that creditors were "hounding" the estate and that he was robbing Peter to pay Paul in order to satisfy creditors. As a business decision based on simple economics, Mrs. McCaffrey and Fortenberry concluded that, if necessary, the estate would have to forego payment of the taxes and *58 then redeem the property at a later date by paying the accrued, delinquent taxes. The interest on unpaid taxes was .50 percent per month or 6.00 percent annually, and funds could not be borrowed from lenders at a low 6.00 percent interest rate. Thus, it was economically advantageous to forego payment of the taxes until the deadline. But on some occasions money was still not available at the deadline, and notices of tax sales were published in the paper. Some of the property which the estate owned actually had to be redeemed, but the record indicates that none of this property was ultimately lost to tax sales.
Mr. McCaffrey owned 55 percent of the stock in McCaffrey Trailer Park, and Mrs. McCaffrey owned the remaining shares that were issued. Mr. Fortenberry sold property which the trailer park owned but did not receive court approval for the sale. This "trailer park" sale was apparently divided into two transactions and consisted of a sale of two parcels of land. Additionally, appellants complain that Fortenberry paid an accountant fees from the estate account without court approval. The unapproved fees totaled $2,194.80 and were considered by Fortenberry to be administrative type expenses. Appellants complain of this expenditure in light of the fact that several income tax returns by the estate were not filed on time.
Chancellor Patterson found that a close confidential relationship existed between Davis T. Fortenberry and his mother-in-law, Mrs. McCaffrey, giving rise to a presumption of undue influence. However, the Chancellor found that the presumption was rebutted by testimony which (a) gave a strong indication of the good faith on the executor's part; (b) revealed that Mrs. McCaffrey had knowledge of and participated in matters pertaining both to the estate and her personal matters which of necessity required conscious deliberation and understanding; (c) indicated that Mrs. McCaffrey was exposed to and did receive consultation from her several children in the day-to-day operations of the estate and her affairs.
Chancellor Patterson described the administration of this estate as follows:
11. The Court, has taken note of the slipshod and careless manner in which this Estate was administered, as well as Executor's obvious disregard for the procedures set up by statute and by the rules of Chancery Court for the administration of Estates. However, because of the Deceased's obvious trust and confidence in him and with the apparent belief that the Executor would carry out the intentions expressed in the Will in the same manner as the Deceased, himself, would have done, coupled with the fact that the Deceased was a very private individual who probably did not want his business affairs made a matter of public record, he chose to relieve the executor of the requirement which would have otherwise been imposed on him by law to make annual accountings. That, together with the fact that Mrs. McCaffrey, as sole beneficiary, was also a very strong-willed but private individual, who also had a great deal of trust and confidence in the Executor, and the added belief by the Executor that his sole duty and responsibility was to operate the Estate in the manner that she, herself, as sole beneficiary, desired for it to be run, so long as all creditors, taxes and costs were satisfied, caused Executor to become more of a business manager and advisor, than an Executor of an Estate, with a responsibility to the Court first for his actions. But even though the Court does not agree with the manner in which this entire matter has been handled, the pleadings have been studied, and the testimony carefully followed, and it should be noted that the demeanor of the Executor on the witness stand was excellent and his answers to questions on cross-examination were direct, spontaneous, detailed, and believed by the Court. Therefore, even though he did not collect all of the rental money personally, sold Estate property, paid some of the expenses of Mrs. McCaffrey without the award of a widow's allowance, and paid himself periodic attorney fees without prior Court *59 approval or authority, all of said acts were deemed to have been within the scope of intended authority conferred upon him by the Deceased in his Last Will and Testament; and all sums which actually came into his possession or that he had knowledge of were accounted for in his Final Account and Amendment and corrections thereto, or were adequately explained in his testimony. In addition, the attorney fees collected by him, in addition to those already cited herein for finding them to be reasonable, are in fact less per month than the fees being authorized by the Court, without objection from the other heirs, for the Administrator d.b.n.c.t.a. of the Estate of Elma B. McCaffrey, who itemized his time and shows that he is working full-time in the administration of her Estate, exclusive of the duties of the attorneys for said Estate who have not yet submitted a bill for their extensive legal services. Although no actual damage has been found to have resulted from the Executor's handling of this estate, and said actions have been determined to have been those intended and/or authorized by the Last Will and Testament of the Deceased, and in compliance with the wishes and instructions of the sole beneficiary thereof, the Court would, nevertheless, remove Executor for his unprofessional attitude and conduct, if it were not for the fact that, except for a few ministerial acts to be hereinafter directed, said Estate is ready to be closed; and this is so even though the Court does not believe that Executor intentionally misappropriated funds or property or that he withdrew attorney's fees from the Estate surreptitiously or without the knowledge of the sole beneficiary. However, the Court intends to sanction said Davis T. Fortenberry for his carelessness by denying him any further fees in this matter and directing him to complete the closing of this Estate forthwith in the manner hereinafter directed without additional compensation.
Therefore, Executor should not be surcharged for any of the attorney's fees received by him in excess of the $32,500.00 previously approved and allowed by Court Order, as requested in paragraph XII of Objections to Final Account and that no portion of the previously approved $32,500.00 in fees should now be disallowed by the Court as sanctions for allowing the estate to remain open for over ten years as requested in said objection.
Record at 291-295. (emphasis added).

I. CONFIDENTIAL RELATIONSHIP AND THE PRESUMPTION OF UNDUE 
INFLUENCE.
In the typical case where the appellants plead the existence of a confidential relationship and the automatic presumption of undue influence, the "influencer" is the beneficiary under a will, the grantee of a deed or a donee of an inter vivos gift. Miner v. Bertasi, 530 So.2d 168 (Miss. 1988); Estate of McRae, 522 So.2d 731 (Miss. 1988); Sacco v. Gordon, 515 So.2d 906 (Miss. 1987); Costello v. Hall, 506 So.2d 293 (Miss. 1987); Will of Polk, 497 So.2d 815 (Miss. 1986); McDowell v. Pennington, 394 So.2d 323 (Miss. 1981); Genna v. Harrington, 254 So.2d 525 (Miss. 1971). However, the facts in the case sub judice are quite different. In the case at bar, the appellants are asking this Court to extend the doctrine of confidential relationship and undue influence which is applicable to certain devisees, beneficiaries and donees to all instances in which attorneys serve as an executor for an estate and collect a fee for their services. This same question was before this Court in Sacco v. Gordon, and we declined to extend the doctrine for each and every case which challenges the actions of an estate attorney or executor. Sacco v. Gordon, 515 So.2d 906 (Miss. 1987).
Nor can we agree with Sacco's argument that the executor of an estate and the attorney for that estate are in such relationships with the beneficiary of the estate that the presumption of undue influence arises, as a matter of law, in transactions between such persons.
Sacco, 515 So.2d at 909.
Therefore, rather than defining the relationships under which confidential relationship *60 and the presumption of undue influence arises, this Court's approach has always been to evaluate each case on its factual merits in search of something more than merely a legal or domestic relationship between the parties to the transaction. Costello v. Hall, 506 So.2d 293, 298 (Miss. 1987).
Fiduciary or confidential relationships may arise in legal, moral, domestic or in a personal context where there is "overmastering influence" on the one side or "weakness, dependence, or trust," on the other. Miner v. Bertasi, 530 So.2d 168, 170 (Miss. 1988). Further, there is a presumption of undue influence which arises from a confidential relationship. Matter of the Estate of Vick, 557 So.2d 760, 769 (Miss. 1989); Harris v. Bradley, 539 So.2d 1040, 1041-42 (Miss. 1989); Matter of Will of Adams, 529 So.2d 611, 614-15 (Miss. 1988); Angle v. Estate of Angle, 519 So.2d 883, 884-85 (Miss. 1988).
Chancellor Patterson found that a close confidential fiduciary relationship existed between Mrs. Elma B. McCaffrey and Davis T. Fortenberry during the period that the estate was open prior to the death of Mrs. McCaffrey. Our review of a chancellor's findings is well settled and very familiar. This Court will not disturb the findings of a Chancellor when supported by substantial evidence unless the Chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. Bowers Window and Door Co., Inc. v. Dearman, 549 So.2d 1309 (Miss. 1989) citing Bullard v. Morris, 547 So.2d 789, 791 (Miss. 1989); Gibson v. Manuel, 534 So.2d 199, 204 (Miss. 1988); Johnson v. Hinds County, 524 So.2d 947, 956 (Miss. 1988); Bell v. City of Bay St. Louis, 467 So.2d 657, 661 (Miss. 1985); Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss. 1983). We find that the record clearly supports the chancellor's finding that Fortenberry was Mrs. McCaffrey's trusted friend, confidant, personal attorney and business advisor in addition to being her son-in-law. There is no question that Fortenberry stood in a confidential relationship to Mrs. McCaffrey, and the chancellor correctly so ruled. Since the presumption of undue influence was established, the burden was on Fortenberry to rebut the presumption by clear and convincing proof. Mullins v. Ratcliff, 515 So.2d 1183 (Miss. 1987); Murray v. Laird, 446 So.2d 575 (Miss. 1984); McDowell v. Pennington, 394 So.2d 323 (Miss. 1981).
This Court announced a three-pronged test for determining when a grantee/beneficiary has overcome this presumption of undue influence.
Thus, our law may be summarized to state that when the circumstances give rise to a presumption of undue influence, then the burden of going forward with the proof shifts to the grantee/beneficiary to prove by clear and convincing evidence of:
(1) Good faith on the part of the grantee/beneficiary;
(2) Grantor's full knowledge and deliberation of his actions and their consequences; and
(3) Advice of (a) competent person, (b) disconnected from the grantee and (c) devoted wholly to the grantor/testator's interest.
Murray v. Laird, 446 So.2d 575, 578 (Miss. 1984).
The third prong of the Murray test was modified in Mullins v. Ratcliff.
The independent advice prong of Murray has been read too strictly. Considering the heavy burden placed upon one seeking to overcome the presumption of undue influence, we find it necessary to redefine the third prong of the Murray test. This we do to the end that the power our law vests in property owners to make bona fide inter vivos gifts not be practically thwarted by often impossible evidentiary encumbrances. We declare that the appropriate third prong of the test is a requirement that the grantee/beneficiary prove by clear and convincing evidence that the grantor/testator exhibited independent consent and action. *61 Mullins v. Ratcliff, 515 So.2d 1183, 1193 (Miss. 1987); see also Marsalis v. Lehmann, 566 So.2d 217, 219 (Miss. 1990).

First Prong of Murray
The first step of the Murray test examines the presence or absence of good faith of the grantee or beneficiary. Murray v. Laird, 446 So.2d 575, 578 (Miss. 1984). In applying the first step of the Murray test for the case sub judice, one would need to examine the record for some indication of overreaching or bad faith on the part of the executor/attorney. Fortenberry testified that he would periodically pay himself an attorney's fee whenever he needed additional funds. While we agree with the chancellor's characterization of this practice as "slipshod and careless," there is simply no evidence that Fortenberry overreached or took an advantage over his mother-in-law. Fortenberry's explanations of questions posed to him at trial were logical and did not reveal any overreaching or overbearing behavior. Fortenberry testified that Mrs. McCaffrey had full knowledge and endorsed all actions which Fortenberry took as the executor/attorney of this estate. There is simply no indication of bad faith by Fortenberry, only a mistaken priority in his duty to the beneficiary, Mrs. McCaffrey, over the obligations that the court placed upon him as the executor.

Second Prong of Murray
The second prong of the Murray test concerns the grantor's full knowledge and deliberation of his actions and the consequences thereof. This second prong of the test is designed to insure that the one who was allegedly "unduly influenced" gave thoughtful deliberation to all considerations before acting. Murray, 446 So.2d at 579.
Mrs. McCaffrey was very aware of the details concerning her late husband's estate. She made many of the decisions regarding its management which the executor would typically make. She apparently made or concurred in the decision to delay payment of property taxes and redeem at the last moment as a matter of crisis management for a cash poor estate. She collected the rental income herself and handled all of the expenses and maintenance needs for the upkeep of some eighty plus rental properties. Further, she was described as a strong-minded and independent person. Fortenberry stated at trial that Mrs. McCaffrey was not the type of person who could be unduly influenced, and the record substantiates this, albeit a self-serving statement.

Third Prong of Murray
The third prong of Murray requires clear and convincing evidence of independent consent and action on the part of the grantor/testator. Mullins v. Ratcliff, 515 So.2d 1183, 1193 (Miss. 1987).
Again, the facts which were recounted above would be applicable here, as well. There are many instances which reveal independent action by Mrs. McCaffrey. In addition to taking control over the bulk of the estate's income and management of the rental properties, it was Mrs. McCaffrey who was reluctant to close her late husband's estate since she considered its continuation to be for her protection. Moreover, Fortenberry aptly notes that Costello v. Hall, 506 So.2d 293, 298 (Miss. 1987), instructs that even when a confidential relationship is found to exist, the beneficiary must have used that relationship for his personal gain or to thwart the intent of the testator. Costello, 506 So.2d at 298 (citing Croft v. Alder, 237 Miss. 713, 723, 115 So.2d 683, 688 (1959)). See Matter of Will of Adams, 529 So.2d 611, 615 (Miss. 1988) (there must be abuse of relationship); Sacco v. Gordon, 515 So.2d 906, 909 (Miss. 1987) (citing Costello with approval; required finding of overreaching or bad faith by beneficiary); see also Matter of Will of Wasson, 562 So.2d 74, 79 (Miss. 1990) (beneficiary must have used relationship for personal gain or derailed intent of testator). The appellants have not attempted to allege that Fortenberry used his position to thwart the intent of Mrs. McCaffrey. While Fortenberry benefitted financially from the employment as the estate attorney, it will be recalled that he was already employed as Mr. McCaffrey's attorney for *62 several years prior to his client's death. Mr. Fortenberry was very familiar with Mr. McCaffrey's business which consisted of considerable holdings. Further, his client's financial posture was bleak at the time of his death. Thus, Fortenberry's continued employment as the estate's attorney/executor was both logical and necessary. Although the appellants complain of excessive fees that Fortenberry withdrew, the chancellor found the fees to be fair and reasonable and less than the fees which were being charged to Mrs. McCaffrey's estate by attorneys under the employment of the appellants.
Despite the deficiencies which Fortenberry exhibited as the executor/attorney for the estate of J.L. McCaffrey, we find nothing which would suggest an exercise of undue influence over Mrs. McCaffrey. While the appellants argue that Fortenberry's testimony is laced with self serving statements, we also note that nothing was offered by the appellants at trial to discredit the explanations which were furnished. While the burden is upon the "accused" to rebut the presumption of undue influence, once the alleged influencer has had his turn at bat, the ball then bounces back to the "accusers" for rebuttal. On the facts of this case, we concur with the finding of the learned chancellor who determined that Fortenberry had successfully rebutted the presumption of undue influence by clear and convincing evidence.

II. THE PAYMENT OF UNAPPROVED ATTORNEY'S FEES BY THE EXECUTOR OF 
AN ESTATE.
Uniform Chancery Court Rules 6.01, 6.07, 6.11 and 6.12 all address the responsibilities of a fiduciary for petitioning the court for approval of attorney's fees in probate matters.
Rule 6.01 Every fiduciary must, unless he is licensed to practice law, retain an attorney or firm of attorneys to represent, advise and assist him during the whole term of his office, whose compensation will be fixed or approved by the Chancellor... .
Rule 6.07 Claims arising after the death of a decedent, such as funeral bills, expenditures for monuments, attorney's fees, and the like must be approved by the chancellor before payment. Otherwise, payment thereof will be at the risk of subsequent disapproval by the Chancellor as to the propriety or reasonableness thereof.
Uniform Chancery Court Rules 6.01, 6.07.
Additionally, state law also requires court approval for fees paid to an attorney who is hired to administer the affairs of an estate.
In annual and final settlements, the executor, administrator, or guardian shall be entitled to credit for such reasonable sums as he may have paid for the services of an attorney in the management or in behalf of the estate, if the court be of the opinion that the services were proper and rendered in good faith... .
Miss. Code Ann. § 91-7-281 (1972).
Over a period of approximately seven and a half years, Fortenberry withdrew $90,360.00 in unapproved attorney's fees. However, in the Order Accepting Final Accounting, the chancellor ultimately approved all sums which Fortenberry withdrew and found such sums to be fair and reasonable and not excessive. The chancellor also determined that modest fees which were paid to outside attorneys who were handling litigation pertaining to the estate and Mrs. McCaffrey were fair, reasonable and necessary. Mr. Fortenberry's total fee of $122,860.00 represented 2189 hours of work at the rate of $50.00 per hour in the first years to $75.00 per hour in the last few years of the estate. At trial, Fortenberry put on testimony which substantiated that the fees which he withdrew were fair and reasonable and consistent with the customary hourly rate charged by other attorneys in the area. According to Fortenberry, he devoted ninety percent of his time to the administration of this estate in the first few years. Further, the chancellor remarked that Fortenberry's fees were less per month than those currently being requested and approved by the administrator *63 d.b.n.c.t.a. in the estate of Mrs. McCaffrey. However, we note that Fortenberry did not present any evidence of contemporaneous documentation for the amount of time that he invested in the management of this estate. Therefore, the chancellor's ultimate approval of $90,360.00 in attorneys fees could not have included an evaluation of the amount of time and work which Fortenberry invested in a seven and a half (7 1/2) year period.
Court approval of attorney's fees is required; however, in Harper v. Harper, we recognized that an attorney can be paid a fee from estate funds without prior court approval, but the attorney takes the fee subject to the peril of having it disapproved later by the chancellor. Harper v. Harper, 491 So.2d 189, 200 (Miss. 1986). In Matter of Chambers, we reversed an allowance of an attorney's fee of $17,000.00 as "shocking." Matter of Chambers, 458 So.2d 691, 693 (Miss. 1984). In Chambers, the executor's neglect resulted in losses to the estate of several thousand dollars in penalties and interest. Chambers, 458 So.2d at 693. It is noted that in the case sub judice, the appellants allege that Fortenberry's neglect of duty resulted in financial losses to the estate. However, since the inventory of Mr. McCaffrey's estate was not filed until ten (10) years following his death, we are unable to accurately determine if the estate incurred financial losses which might be attributed to Fortenberry's neglect of duty.
Furthermore, the Court abhors Fortenberry's reckless practice of withdrawing fees on an unscheduled, periodic basis with no prior approval and strongly counsels against such an approach. The record reveals that over a period of time spanning seven and a half (7 1/2) years, Fortenberry withdrew his own fees at will in complete disregard for statutory obligations and chancery court rules governing the administration of estates. See Miss. Code Ann. § 91-7-281 (1972); Unif.Chan.Ct.R. 6.01, 6.07. We are not compelled to condone such an egregious neglect of duty. Therefore, we find that the chancellor was manifestly in error when he approved $90,360.00 in fees which Fortenberry paid himself during a seven and a half (7 1/2) year period. Consequently, it follows then that we reverse as to that portion of the Final Order which ultimately approved these fees and hereby surcharge Davis T. Fortenberry in the amount of $90,360.00.

III. THE EXECUTOR'S MALADMINISTRATION OF THE ESTATE FOR HIS FAILURE TO FOLLOW CHANCERY COURT RULES AND STATE LAW.
Mr. McCaffrey owned eighty-four parcels of rental property. As noted above, Mr. Fortenberry had an arrangement whereby Mrs. McCaffrey would collect the rental income, police the tenancy and pay the expenses. Sums over and above whatever amounts were necessary for the maintenance of the property were deposited by Mrs. McCaffrey to the estate account of which she was the sole beneficiary. The appellants argue that Fortenberry's failure to take control of all of the rental income violated his duty as an executor under § 91-7-47 of the Mississippi Code.
Every executor or administrator with the will annexed, who has qualified, shall have the right to the possession of all the personal estate of the deceased, unless otherwise directed in the will; and he shall take all proper steps to acquire possession of any part thereof that may be withheld from him, and shall manage the same for the best interest of those concerned, consistently with the will, and according to law.
Miss. Code Ann. § 91-7-47 (1972) (emphasis added).
In essence, the statute requires the executor to marshal the assets for the benefit of "those concerned." Fortenberry's response is that there was only one concerned party, Mrs. McCaffrey. Fortenberry points out that it was Mrs. McCaffrey who devised this plan for rent collection which obviously met with her approval.
This leads one to conclude that the executor's maladministration in this instance resulted more from his failure to be more assertive in the management of the *64 estate rather than from a conscious intent to disregard the law in this instance. Fortenberry argues that since Mrs. McCaffrey assumed control over the bulk of the estate's income with no loss occurring by this arrangement, then no detriment or harm inured to anyone. However, Fortenberry testified about the estate's severe indebtedness, redemption of property lost to tax foreclosure, and late filing of estate tax returns. Again, we are without a complete "record" in this case; and, in the absence of a proper inventory and accounting we are unable to evaluate Fortenberry's claim that no loss resulted due to the beneficiary's management of the estate. We take this opportunity to note that when a beneficiary is ready, willing and capable of managing an estate's income and disbursements, then the proper course for a fiduciary would be directed at efforts to bring about a closure and distribution of the estate assets without delay. Rather than taking the necessary steps to close the estate, Fortenberry allowed it to remain open for ten years. It is well known that an executor has a responsibility to move forward with due diligence in probating and closing the affairs of an estate. Such a responsibility is inherent in one's obligation as a fiduciary.
Mr. McCaffrey was in the business of buying and selling real estate. When he sold a piece of property, he would often take a down payment and receive a note with a deed of trust. The notes would be placed with the bank for collection, and the debtors would make their payments directly to the bank. The collected funds were deposited into a special account with Citizens Bank. Mr. and Mrs. McCaffrey owned this account with a survivorship provision. Upon Mr. McCaffrey's death, Mrs. McCaffrey became the sole owner. Mrs. McCaffrey had control over this account. Occasionally, when the estate account was short of funds, Mrs. McCaffrey would transfer funds from this bank account to the estate account.
Fortenberry testified at trial that this was a survivorship account and that Mrs. McCaffrey became the sole owner upon her husband's death. The appellants offered nothing to rebut Fortenberry's claim that this was a survivorship account. It is, of course, well settled that survivorship property becomes the property of the survivor, and the joint tenant's estate has no interest in these funds. In re Will and Estate of Strange, 548 So.2d 1323, 1328 (Miss. 1989); In re Ware's Estate, 218 Miss. 694, 67 So.2d 704, 706 (1953).
Before an executor can sell realty, court approval of the sale must be obtained. Miss. Code Ann. § 91-7-187 (1972). Mr. Fortenberry understood this, and a review of the docket sheets reveals many instances where Fortenberry sought and obtained court approval to sell realty. However, there were at least two occasions when Fortenberry did not obtain court approval.
At the hearing, Mr. Fortenberry was questioned about a court approved sale of realty in the amount of $26,000.00 which was paid directly to Mrs. McCaffrey, thereby bypassing the estate. The appellants argue that Fortenberry's failure to take control of the proceeds of this sale to pay administrative expenses and taxes constituted further evidence of maladministration.
Mr. Fortenberry explained this transaction. In March of 1983, the estate obtained a bank loan in the amount of $125,000.00 to pay off all remaining obligations owed by the estate. All debts were paid except for taxes and insurance as those items became due. From that point forward, Fortenberry did not receive any funds which belonged to the estate since all creditors except for the bank had been satisfied. The note on the $125,000.00 loan was to be paid in monthly installments of $2900.00, and this payment was to be debited from a trailer park account that was owned and held by Mrs. McCaffrey solely. Therefore, due to Mrs. McCaffrey's need to fund this trailer park account in order to satisfy the last remaining debt to the bank, all funds from that point forward from the sale of realty were deposited to Mrs. McCaffrey directly. Eventually, the bank note of $125,000.00 was satisfied in June of 1986 *65 when a piece of property was sold for $100,000.00.
Every executor or administrator is required to file an annual accounting with the court at least once in each year showing receipts and disbursements. Miss. Code Ann. § 91-7-277 (1972). At the end of the first year of administering the estate, Fortenberry filed a "First Annual Account." When he presented this document to Mrs. McCaffrey for her review and signature, she inquired into the need for the document. After being informed that the document would become a matter of public record upon filing, Mrs. McCaffrey became upset and asked Fortenberry not to file any more accountings. Therefore, Fortenberry did not file any additional accountings until he filed the final account on May 15, 1987. Significantly, Mr. J.L. McCaffrey's will waived the requirement that the executor file accountings.
Our prior cases which have addressed the testator's waiver of the statutory requirement of filing annual accountings have resulted in some uncertainty on this question. R. Weems, Wills and Administration of Estates in Mississippi, § 9-4, 216 (1988). In Smith v. Bank of Clarksdale, this Court indicated in dicta that a testator's waiver of an accounting would be honored. Smith v. Bank of Clarksdale, 374 So.2d 776, 779 (Miss. 1979). Moreover, Harper clearly endorses the testator's waiver of the statutorily required accounting. "[T]he testator may waive the executrix's duty to account. The granting of such a privilege imputes to the executor confidence and trust." Harper v. Harper, 491 So.2d 189, 200 (Miss. 1986). By way of comparison, the rule is markedly different in instances where the testator's will makes no provision at all for the waiver of accountings. In the Matter of Chambers, the will in question made no provision for the waiver of the annual accounting, and we held in unequivocal terms that the statutory requirement imposed by § 91-7-277 is a mandatory, affirmative duty and not merely advisory. Matter of Chambers, 458 So.2d 691, 693 (Miss. 1984). However, despite a testator's waiver, the chancery court may require an accounting upon a charge of mismanagement by the devisees under a will. Harper, 491 So.2d at 200.
Mr. McCaffrey's will clearly relieved his executor of the necessity of filing annual accountings.
I hereby nominate and appoint Davis T. Fortenberry as the Executor of this my Last Will and Testament and I hereby expressly direct that he not be required to post any bond whatsoever and that he never be required to give any accounting thereof.

In light of Harper and the testator's waiver of the annual accounting, we do not find that the executor's failure to file annual accountings constituted maladministration.
Under Miss. Code Ann. § 91-7-93 (1972), the executor must file an inventory within ninety days of the grant of letters testamentary. Section 91-7-95 requires the executor to update this inventory within thirty days from the time when additional assets are discovered. Fortenberry alleges that McCaffrey's will waived the inventory as well as the accounting. We do not read the testator's statement of waiver so broadly. While the accounting was clearly waived by Mr. McCaffrey, there is no suggestion of any intent to waive the inventory in the testator's will. Mr. Fortenberry did not file an inventory of the estate's assets until ten years after the grant of letters testamentary when he was required to do so under court order. Mississippi law imposes an affirmative duty for an executor to complete this task within ninety days, and Fortenberry's failure to comply was a direct violation and breach of his fiduciary duty.
Every fiduciary for an estate is required to file an estate tax return for the taxable year. Miss. Code Ann. § 27-7-35 (Supp. 1990). Fortenberry was late in filing four estate income tax returns. However, the record contains no suggestion that this failure to timely file resulted in any penalty or interest unlike the situation in Chambers where untimely filing resulted in substantial *66 penalties and interest. Matter of Chambers, 458 So.2d 691, 693 (Miss. 1984).
Finally, the appellants raise two additional issues concerning Fortenberry's failure to sell some equipment which the estate owned and his receipt of a diamond stick pin from Mrs. McCaffrey six weeks prior to her death. After a review of the record and the arguments advanced by the parties on both of these points, we find no merit to appellant's suggestion of error. We note only in passing that the two gifts of personal items by Mrs. McCaffrey to Fortenberry were not isolated transactions, but rather were part of a much larger scheme whereby Mrs. McCaffrey gave several other items of her personal belongings to other family members as well.

CONCLUSION
Mr. Fortenberry violated statutory and court imposed duties as the executor of this estate. While the Court is cognizant of the formidable task which Fortenberry inherited, his obligations to the Court as a fiduciary are not excusable. When Mr. Fortenberry began the administration, the estate was heavily in debt. Gradually, he was able to guide the estate to a more stable financial posture. However, the time and effort required in the day-to-day administration of a large estate is in addition to, and not a substitute for, the duties which the law and the courts place upon fiduciaries of estates. Further, we find that although Fortenberry considered Mrs. McCaffrey to be a client, loyalty to the beneficiary of a will cannot take precedence over a fiduciary's responsibility to the court to act responsibly and prudently for the entire estate.
For the reasons stated in this opinion, we reverse only that portion of the Order which ultimately approved $90,360.00 in attorney/executor fees which Fortenberry withdrew over a period of several years without prior court approval. Consequently, Davis T. Fortenberry is surcharged for this amount. As to all other issues raised in this appeal, we affirm the Order of the Forrest County Chancery Court of January 13, 1988. Appellants and appellee are taxed equally with the costs of this appeal.
AFFIRMED IN PART; REVERSED IN PART.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, PITTMAN and McRAE, JJ., concur.
SULLIVAN and BANKS, JJ., not participating.