803 So.2d 1285 (2002)
Ernest Glenn LANCASTER, Linda Jean Lancaster Dykes, Helen Elaine Lancaster Stevens and Cynthia Renee Lancaster Dugas, Appellants
v.
Robert Kendrick BOYD, Appellee.
No. 2001-CA-00187-COA.
Court of Appeals of Mississippi.
January 8, 2002.
*1287 Derek E. Parker, Yazoo City, Attorney for Appellants.
Samuel H. Wilkins, Kyle Boyd Ainsworth, Jackson, Attorneys for Appellee.
Before McMILLIN, C.J., BRIDGES, and CHANDLER, JJ.
BRIDGES, J., for the Court.
¶ 1. Ernest Glenn Lancaster, Linda Jean Lancaster Dykes, Helen Elaine Lancaster Stevens, and Cynthia Renee Lancaster Dugas (here after Lancasters) brought suit against Robert Kendrick Boyd in order to have an inter vivos transfer of land by their father, Ernest Lancaster, set aside. The chancellor found in favor of Boyd, and the appellants now come to this Court raising four issues:
1. WHETHER THE CHANCERY COURT ERRED IN REFUSING TO SET ASIDE THE DEED AFTER FINDING THAT A CONFIDENTIAL RELATIONSHIP EXISTED BETWEEN ERNEST LANCASTER AND ROBERT KENDRICK BOYD;
2. WHETHER THE CHANCERY COURT APPLIED AN ERRONEOUS LEGAL STANDARD IN NOT SHIFTING THE BURDEN OF PROOF TO THE PROPONENT OF THE DEED UPON FINDING A CONFIDENTIAL, FIDUCIARY RELATIONSHIP;
3. WHETHER THE CHANCERY COURT ERRED IN FINDING THAT ERNEST LANCASTER WAS COMPETENT TO EXECUTE AND DELIVER THE DEED ON DECEMBER 30, 1997; AND
4. WHETHER THE CHANCERY COURT ERRED IN FINDING THAT THERE WAS ADEQUATE CONSIDERATION FOR THE DEED.
Finding error, we reverse and remand.

STATEMENT OF THE FACTS
¶ 2. This suit arises out of a land transaction in which Ernest Lancaster sold some of his land to Robert Kendrick Boyd. Ernest and Boyd had known each other for approximately twenty-two or twenty-three years prior to Ernest's death, and Ernest worked in Boyd's convenience store in Bentonia. The two men had an arrangement where Boyd did not pay Ernest a salary, but Boyd allowed Ernest to take any groceries or gas he needed without having to pay for it. Ernest owned a trailer which he kept on some of Boyd's land next door to the store. Boyd stayed in the trailer a great deal of the time and provided gas and electricity for the trailer. Boyd also acted as signatory on Ernest's checking account.
¶ 3. On December 9, 1997, Ernest was hospitalized at the Veteran's Administration Hospital for a broken hip and prostate cancer. Boyd and the Lancasters alternated staying with Ernest while he was in the hospital. Ernest remained in the hospital until December 22. When Ernest was released, his children and Boyd agreed Ernest would be best served by convalescing at Boyd's home in Florence where Boyd could care for him. Glenn Lancaster, Ernest's son, testified Boyd was the one who suggested Ernest live with him. Ernest's children continued to check on Ernest and periodically stayed with him while he was at Boyd's house. However, Boyd was Ernest's primary caregiver.
¶ 4. A deed was executed on December 30, 1997, conveying Ernest's land to Boyd. The deed was prepared by Boyd's attorney, Mr. Wilkins, and Boyd got the land's legal description from the courthouse. Boyd testified Ernest had discussed doing this for two or three years prior to the conveyance and had asked Boyd to have the deed prepared. Boyd arranged for Sammy Ainsworth, Vice President of Trustmark Bank in Florence, to come to Boyd's house and notarize Ernest's signature. *1288 Boyd testified he gave Ernest $1000 as consideration for the land and placed the money in Ernest's billfold. The billfold and the money were never found.
¶ 5. During his stay at Boyd's house, Ernest was in a great deal of pain and was taking several different types of medication. Elaine Stevens, an appellant and one of Ernest's daughters, testified the drugs her father was taking made him drowsy and unaware of what was happening around him, and that Ernest took good care of his property. Elaine testified Ernest had sold her some land at an earlier time, and that same land was included in the legal description of the land he sold to Boyd. Elaine stated that had he known what he was doing, Ernest would never have signed a deed which contained land he had already sold to her. In contrast, Boyd testified Ernest knew what he was doing during the transaction. Ainsworth testified Ernest knew and appreciated what he was doing during the execution, but Ainsworth did not remember who produced the deed and did not ask Ernest if he knew what he was doing. Cynthia Luby, the home health care nurse responsible for visiting Ernest, also testified. Luby testified Ernest was knowledgeable about his medication, was alert, but was also forgetful and weak. After all the testimony was heard, the chancellor dismissed the appellants' request to set aside the inter vivos transfer of Ernest's land.

STANDARD OF REVIEW
¶ 6. "The chancellor's decision will not be reversed unless the decision is manifestly wrong." In the Matter of the Estate of Arthur Green, 755 So.2d 1054 (¶ 4) (Miss.2000). "The Court will not hesitate to reverse if it finds the chancellor's decision is `manifestly wrong, or that the court applied an erroneous legal standard...'" In re Estate of McClerkin, 651 So.2d 1052, 1055 (Miss.1995) (citing Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss. 1993)).

ANALYSIS

1. WHETHER THE CHANCERY COURT ERRED IN REFUSING TO SET ASIDE THE DEED AFTER FINDING THAT A CONFIDENTIAL RELATIONSHIP EXISTED BETWEEN ERNEST LANCASTER AND ROBERT KENDRICK BOYD.

2. WHETHER THE CHANCERY COURT APPLIED AN ERRONEOUS LEGAL STANDARD IN NOT SHIFTING THE BURDEN OF PROOF TO THE PROPONENT OF THE DEED UPON FINDING A CONFIDENTIAL, FIDUCIARY RELATIONSHIP.
¶ 7. These issues have been combined because they are interrelated to such a degree that the outcome of one impacts the outcome of the other. The Lancasters agree the chancellor was correct in finding Boyd to be in a confidential relationship with Ernest. However, the Lancasters argue the chancellor erred by failing to recognize the presumption of undue influence which arises when a confidential relationship is shown and also in failing to shift the burden of proof to Boyd to rebut this presumption. Boyd answers this claim by stating that while a presumption of undue influence does arise, the chancellor correctly found Boyd had presented enough evidence to effectively rebut the presumption.
¶ 8. The chancellor in this case found Ernest was in a confidential relationship with Boyd at the time of the execution of the deed. This Court agrees. Ernest had known Boyd for around twenty-two to twenty-three years and was living with Boyd at the time. Ernest had worked at Boyd's convenience store and had previously lived in a trailer located on Boyd's *1289 land without having to pay rent. Boyd was allowed access to Ernest's checking account. Boyd was also Ernest's primary care-giver after his stint in the hospital. All of these factors overwhelmingly support the chancellor's finding that the two men were in a confidential relationship.
¶ 9. When a confidential relationship is found to exist in a situation where an inter vivos transfer was made, a presumption of undue influence is established. In re the Last Will and Testament of McCaffrey v. Fortenberry, 592 So.2d 52, 60 (Miss.1991). Therefore, the burden to rebut this presumption, in this case, falls on Boyd. In order to effectively rebut the presumption of undue influence, a grantee/beneficiary must prove by clear and convincing evidence each of the following:
1. The grantee/beneficiary acted in good faith. Proof requirements of this part of the test require an examination of the record for an indication of bad faith or overreaching by the grantee. Id. at 61. Other factors which can be important in showing good faith include: the identity of the initiating party who prepared the instrument, place where the instrument was executed, the consideration which was paid, who paid the consideration, and the degree of secrecy surrounding the execution. Murray v. Laird, 446 So.2d 575, 578 (Miss.1984).
2. The grantor had full knowledge and deliberation of his actions and the consequences of those actions. McCaffrey, 592 So.2d at 60. This part deals with whether the grantor had full knowledge of his actions, knew the consequences of those actions, and is designed to insure the grantor gave thoughtful deliberation to these things before acting. Id. at 61. Important factors in dealing with this prong also include: the grantor's awareness of his assets and their value, an understanding of who would be the natural inheritors of his estate by will or by intestacy and how the change will affect the previous outcome, whether non-relative beneficiaries will be included or excluded, knowledge of who controls the grantor's finances and how dependent on or susceptible to that person the grantor is. Murray, 446 So.2d at 578.
3. The grantor/testator exhibited independent consent and action. McCaffrey, 592 So.2d at 60. The third prong requires clear and convincing evidence proving independent consent and action by the grantor. Id.

¶ 10. In this case, the chancellor did not address each of these factors within her findings. In fact, after the chancellor made the statement that a confidential relationship had been established, the chancellor went on to state the next step is to examine the validity of the inter vivos deed. The chancellor then recited a great deal of testimony regarding Ernest's mental state. After making these statements, the chancellor then declared the Lancasters failed to overcome their burden to prove the deed was invalid.
¶ 11. Boyd addresses each of the three factors, as stated above, in his brief. In addressing the three factors, Boyd makes several statements regarding Ernest's desire to convey the land, which he claims are uncontested. The reason these statements cannot be contradicted is no one, besides Boyd, was around at the time the statements were supposedly made, and no one heard Ernest espouse such a thing. This calls into question the secrecy surrounding the circumstances under which the deed was executed. There was also the testimony of Sammy Ainsworth which indicated Boyd had moved in with Ainsworth's elderly uncle, and the uncle left Boyd his house. This was allowed into evidence to show a pattern of conduct. There was also some question about whether Boyd wrote a $15,000 check to himself out of Ernest's account.
*1290 ¶ 12. While these things may be so, they cannot be the grounds upon which any sort of reversal should be based. As stated earlier, our standard of review demands this Court reverse a chancellor's decision if she applies an erroneous legal standard. In re Estate of McClerkin, 651 So.2d at 1055. Because the chancellor failed to shift the burden of proof to Boyd after a confidential relationship was proven, the chancellor applied an erroneous standard of proof. Boyd argues the chancellor's citing the case of Mullins v. Ratcliff, 515 So.2d 1183 (Miss.1987) proves she applied the correct legal standard, and that because the elements were not specified in writing does not mean she did not shift the burden of proof. This Court finds no evidence, specified in writing or otherwise, which proves the chancellor applied the correct legal standard. For this reason, this Court must reverse the chancellor's decision, and remand this case for a new trial. Because this case is being remanded on the basis of the first two issues discussion of the last two issues is not necessary here, but they should be resolved, and properly addressed, during the new trial.

CONCLUSION
¶ 13. This Court finds the chancellor erred in her failure to shift the burden of proof to Boyd once a confidential relationship was found. Therefore, we reverse the chancellor's findings and remand for a new trial.
¶ 14. THE JUDGMENT OF THE YAZOO COUNTY CHANCERY COURT IS HEREBY REVERSED AND REMANDED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. IRVING, J., DOES NOT PARTICIPATE.