426 So.2d 780 (1983)
Pauline Parks RICHARDSON, et vir.
v.
Betty J. LANGLEY & Sara Blankenship, Sole & Only Heirs at Law of Georgia Pauline Boykin Parks, Deceased.
No. 53584.
Supreme Court of Mississippi.
January 26, 1983.
*781 Hathorn & Hathorn, J. Hoy Hathorne, Louisville, for appellants.
Fair & Mayo, James C. Mayo, Louisville, Hardy R. Stennis, Macon, for appellees.
Before WALKER, P.J., and BROOM and DAN M. LEE, JJ.
BROOM, Justice, for the Court:
Mental capacity of a grantor (Georgia Pauline Boykin Parks) to execute a warranty deed is the sole issue in this case appealed from the Chancery Court of Winston County, the Honorable Edward C. Prisock, Chancellor, presiding. The lower court found that grantor Georgia Pauline Parks lacked the requisite mental capacity to execute the deed because of medication she had been taking. Since the trial below, grantor Parks died and her action was revived in the name of her heirs at law, the appellees now. Upon the record before us, the decree must be reversed.
Grantor Parks, at the time of the events in question, was a sixty-five-year-old woman suffering from severe rheumatoid arthritis. She had other health problems including a broken femur. Grantor Parks was admitted to the hospital on June 29, 1980, and was placed on various medications, including Iberet 500, Clinoril, Macrodantin, *782 P-200, and Flexeril. These medications were administered to Parks on a regular basis during her ten days in the hospital. In addition to the aforementioned medications, Parks was also prescribed on a "PRN" (as needed) basis, Phenaphen, and Codeine, Stadol, and Phenergan, and Dalmane.
On July 1, 1980, the appellants, Mrs. Pauline Parks Richardson and her husband, Speed Richardson, came to see Parks. Parks' daughter, Betty Langley, was present in the room. Their testimony is that at that time they discussed the possibility of Parks selling them her one-third interest in a sixty-eight-acre tract of land originally owned by grantor Parks' father-in-law, who was Mrs. Richardson's father.
After the Richardsons left the hospital, they went to their attorney's office and had the deed in question prepared. Next day, July 2, 1980, they returned to Parks' hospital room where her daughter, Betty Langley, was again present. On this occasion the uncontradicted evidence establishes that grantor Prks executed the deed with the assistance of her daughter who held the pen and made her (grantor's) mark for her due to her severe arthritic condition. Her mark was witnessed by her daughter, Betty Langley, and a registered nurse, Mrs. Beverly Holdiness, who was on duty at the time. The deed was immediately carried by the Richardsons for notarization to a notary in the next building, and was filed that same morning.
About six weeks later Mrs. Parks brought this chancery action to set aside the conveyance upon the sole grounds that she was without "the mental or physical capacity to execute" the deed because of her severe pain and her medication. Other facts will be stated as needful in this opinion.
First argument of the appellants Richardson (grantees) is their contention that the lower court erred in overruling the general demurrer which they filed to the amended bill of complaint. We think the lower court correctly overruled the demurrer because the complaint charged lack of mental capacity which is sufficient to withstand attack by demurrer.
Secondly, they argue that the lower court erred in unduly restricting the testimony of Nurse Beverly Holdiness, a subscribing witness to the grantor's mark. Our study of the record and briefs reveals that the chancellor was not in error because he did not sustain the objections until the nurse had testified that she did not remember the specifics surrounding the execution of the deed. The thrust of the objection was that the nurse should not be permitted to testify about the grantor's capacity to sign the deed because the nurse had already stated that she could not recall the specifics of the event. In sustaining the objections it is clear that the chancellor did not base his action upon Nurse Holdiness' capacity as a subscribing witness but was merely sustaining an objection to a question about which the witness had already testified she had no further recollection.
Third argument is the contention that the lower court erred in overruling the appellants' (grantees') motion, at the conclusion of the evidence presented by the grantor, to exclude the evidence and find for appellants. We find no error in this regard in view of our rule that in acting upon the motion to exclude and enter a decree for the appellants, the lower court was bound to consider the evidence in a light most favorable to the grantor along with reasonable inferences to be drawn from such testimony. Applying this rule to the case before us causes us to conclude that the lower court did not err in overruling appellants' motion to exclude and find for them at the close of the presentation of the grantor's (Parks') proof.
The fourth and fifth arguments rest essentially upon the contention that the lower court's decision setting aside the deed executed by Parks in favor of the Richardsons was manifestly wrong and against the overwhelming weight of the evidence. In dealing with these arguments it is to be noted that the only issue at the trial was whether the grantor, Mrs. Parks, was mentally incompetent to execute the deed at the time *783 it was signed on the occasion in question. Fraud, undue influence, confidential relationship, or overreaching was not pleaded, and there is no averment that Mrs. Parks was non compos mentis. Likewise, there is no charge that the consideration for the deed was inadequate.
Well established in this jurisdiction is the long-standing rule that the burden of proving lack of mental capacity rests squarely on the party seeking to have such deed set aside. Thigpen v. Payton, 391 So.2d 629 (Miss. 1980); Williams v. Wilson, 335 So.2d 110 (Miss. 1976); Herrington v. Herrington, 232 Miss. 244, 98 So.2d 646 (1957); Gillis v. Smith, 114 Miss. 665, 75 So. 451 (1917). Clear and convincing evidence is necessary to establish this lack of mental capacity. Unless the proof put on by the party seeking to set aside a deed establishes that the grantor was permanently insane up to and beyond the time of the execution of the deed, the test of the grantor's mental capacity is to be applied as of the time of the execution of the deed. Moore v. Stone, 208 So.2d 585 (Miss. 1968); Texaco, Inc. v. Musgrove, 253 Miss. 209, 175 So.2d 490 (1965).
We have traditionally made a distinction between "weakness of intellect" and a total lack of capacity to execute a deed. Such a "weakness of intellect" when coupled with another factor, such as grossly inadequate consideration, or the existence of a confidential relationship may be sufficient to warrant the granting of equitable relief. Absent such a confidential relation, or grossly inadequate consideration, a "weakness of intellect" in and of itself, which does not rise to the standard of a total lack of capacity to execute a deed is an insufficient basis upon which to set aside a deed. Kemp v. Kemp, 254 So.2d 876 (Miss. 1971); McElveen v. McElveen, 233 Miss. 672, 103 So.2d 439 (1958); Puryear v. Austin, 205 Miss. 590, 39 So.2d 257 (1949); Nubby v. Scott, 186 Miss. 309, 190 So. 911 (1939); Wall v. Wall, 177 Miss. 743, 171 So. 675 (1937); Cresswell v. Cresswell, 164 Miss. 871, 144 So. 41 (1932); Gillis v. Smith, supra; Clark v. Lopez, 75 Miss. 932, 23 So. 648 (1898). This rule allowing an equity court to set aside a deed upon a finding of a weakness of intellect, plus another factor such as grossly inadequate consideration was even more clearly defined in Cunningham v. Lockett, 216 Miss. 879, 63 So.2d 401 (1953). Cunningham held that a weakness of intellect when coupled with grossly inadequate consideration did indeed constitute grounds for setting aside a deed. Nonetheless, we held that "weakness of intellect" required evidence of more than age and sickness on the part of the grantor. Such weakness must be a weakness of the mental faculties. In summary, a party seeking to set aside a deed solely on the grounds of the mental incapacity of the grantor, has the burden of establishing such incapacity by clear and convincing proof focused upon the grantor's incapacity at the time execution was attempted. Moreover, in the absence of one of the aforementioned additional elements, this "mental incapacity" which must be proven requires proof of more than a "mere weakness of intellect" but rather a total lack of mental capacity on the part of the grantor.
We now will analyze and evaluate the evidence in the instant case mindful of the legal requirements set forth above. When the deed in question was executed in Parks' hospital room, the evidence indicates that six persons were present: Georgia Parks, the grantor; Betty Jane Langley, her daughter who witnessed her mark; Pauline Richardson, the grantee; Speed Richardson, the grantee's husband; Betty Shinn, a neighbor and friend; and Beverly Holdiness, a registered nurse who was the other witness to the grantor's mark. All six of these persons testified at trial. Also introduced was the deposition of Dr. Morris who was not present at the time of the deed's execution. Two other witnesses testified as to collateral matters at the trial, not specifically involving the events surrounding the execution of the deed.
As previously indicated, Dr. Morris was not present at the time of the deed's execution, and specifically testified that he could not give an evaluation of grantor Mrs. *784 Parks' mental condition on the morning of July 2, the date in question. Cases cited in the briefs are not directly on point of a doctor's testimony of the effect of drugs on a patient's mental capacity at a time when the doctor was not present. Nonetheless, such a situation may be analogized to a doctor's testimony concerning the question of a grantor's temporary or permanent insanity. In Williams v. Wilson, supra, we were confronted with the question of the validity of a deed which had been executed by an adjudged lunatic. We held that the sanity of a grantor is presumed until the contrary appears and that the burden is on the party asserting the grantor's insanity. Once the burden of showing the grantor to be permanently insane is met, then it becomes incumbent on the grantee to show that the execution of the deed occurred during a "lucid" interval, and such interval must be shown by strong and demonstrative proof.
Texaco, Inc. v. Musgrove, supra, set forth the distinction between permanent and intermittent insanity, and held that testimony of a grantor's intermittent insanity will not raise the presumption of insanity at the time of the deed's execution. Once again the Court emphasized that the crucial time in such a case is the actual time the document is executed. In Musgrove the doctor who testified as to the intermittent insanity of the grantor, did not testify as to the grantor's mental capacity or lack thereof on the day of the execution of the deed. Holding that such testimony was required, we reversed the trial court and upheld the deed's validity.
Dr. Morris' testimony established that grantor Parks was given medication during her hospital stay including four drugs which had the potential to affect her mind. Of those four potentially mind-affecting drugs, only one was being given on a regular basis, i.e., Flexeril, which Dr. Morris testified was a muscle relaxer with very mild tranquilizer properties. Of the other drugs in question, Dr. Morris testified that the hospital records indicated that grantor Parks had not received any of these potentially mind-affecting drugs after four o'clock that morning. Likewise, he testified that if the time of the execution of the deed was after eleven o'clock (which undisputed subsequent testimony did indicate), Mrs. Parks could have been completely "medicine free" when executing the deed.
Although Dr. Morris testified that in his opinion there was a probability that Parks was not competent at the time she executed the deed, on cross-examination he stated there was a possibility that she was entirely mentally competent. He testified that on the occasions when he did see Mrs. Parks, he was able to communicate with her effectively. He indicated doubt that she should have been allowed to execute the deed, and if he had been present he would have suggested another time. Most significantly, Dr. Morris testified he was not able to express an opinion of Mrs. Parks' mental capacity or lack thereof at the time she executed the document.
The mere fact that a grantor has been taking drugs or alcohol is not sufficient to raise the presumption of incapacity so as to require "strong and demonstrative proof" of a lucid period on the part of the grantee. In Herrington v. Herrington, supra, as previously discussed, we held that the mere fact that the grantor had been taking Demoral, a powerful narcotic, for the pain induced by his terminal cancer, did not ipso facto render him mentally incapable of executing a deed. The Herrington opinion indicated that the grantor's actions and conversation at the time in question were the primary indicia of mental capacity or lack thereof.
McGowan v. Brooks, 16 So. 436 (Miss. 1894), involved the validity of a deed which had been executed by a grantor who had been drinking all day long. In spite of this fact, testimony was put on to the effect that his actions at the time of the execution of the deed indicated someone who was in full control of his mental faculties. Thus, in spite of the fact that the grantor did not remember executing the deed, the testimony from his attorney and from the creditor to whom the deed was delivered both indicated *785 that the grantor had the capacity to execute the deed. The notary testified that he did not specifically remember the actions and conversations of the grantor, but said that he would not have witnessed the deed in question if he had noted anything wrong. In upholding the validity of the deed, we held that in determining the grantor's mental capacity under such circumstances, one must look to the actions and words of the grantor at the time execution transpired.
Exum v. Canty, 34 Miss. 533 (1857), is a similar case on the question of a grantor's mental capacity to execute a deed. There we held that a deed executed by an elderly, paralytic man, who was given to drinking, was valid in spite of testimony from Mississippi neighbors that the man was insane. At the time he executed the deed, the grantor had been living in South Carolina and South Carolina witnesses testified he had the mental capacity to execute a deed.
Reading Herrington, McGowan and Exum together demonstrates our rule that the mere ingestion of substances which have a potential to affect a person's mind is not sufficient to render ipso facto invalid a deed executed by that person on the ground of lack of mental capacity. Clearly in such circumstances, the grantor's capacity must be judged within the context of his actions at the time he executed the deed. Here Dr. Morris' testimony did not establish that grantor Parks lacked mental capacity when she executed the deed to the appellants Richardson.
Parks herself took the stand and testified that she remembered her daughter taking her to the hospital and she remembered being given a shot that made her sleepy. She denied remembering any discussion about her deeding the land away. She testified she remembered little, if anything else, about her entire stay at the hospital, and on cross-examination did not remember going to the hospital at all. McGowan v. Brooks, supra, makes it clear that a grantor's inability to remember the execution of a deed is insufficient to establish that the grantor lacked the mental capacity to execute the deed.
Appellant Mrs. Richardson (grantee) testified as to the details of the July 2 transaction when the deed was executed. Her testimony was that grantor Parks was normal at the time and discussed details of the matter with her daughter, such as how much of the $9,000 was to be placed in the checking account and how much in the savings account. Mrs. Richardson testified that Parks told her daughter not to notify the welfare department because the first of the month had already come and therefore she would still be eligible for food stamps. Mrs. Richardson testified she showed Parks the $9,000 check payable to Mrs. Parks and, to the best of her recollection, gave the check to Betty Langley, Parks' daughter, inasmuch as Parks' arthritic condition rendered her unable to actually hold the check. Speed Richardson, Mrs. Richardson's husband, took the stand and essentially confirmed in fair detail the substance of Mrs. Richardson's testimony.
Betty Shinn, who had known Mrs. Parks for approximately twenty-eight years, testified that on July 1, when she and the Richardsons visited grantor Parks in the hospital, Parks was "a little drowsy, but was otherwise all right." Mrs. Shinn testified that Parks seemed happy about the prospect of selling the land and indicated that she needed money. Shinn testified that on July 2, when they returned and the deed was executed, Parks clearly remembered the fact that they had been by to visit her the day before and again discussed her need for money and directed her daughter as to the proper distribution of the proceeds between checking and savings accounts.
Careful analysis of all of the testimony before the lower court reveals that not one properly qualified witness stated that at the time the deed was executed, grantor Parks lacked adequate mental capacity. The mental capacity of an individual to execute a deed is a nebulous and ethereal quality and at best presents an extraordinarily difficult question for judicial determination. Nonetheless, the orderly function of day-to-day affairs requires courts to face and adjudicate such questions.
*786 Mississippi jurisprudence has approached this problem from the perspective of being swift to provide a remedy in equity upon proper pleadings, averments, and proof showing circumstances of mental incapacity combined with a separate, readily perceivable, tangible set of circumstances such as undue influence, confidential relationship, fiduciary capacity, grossly inadequate consideration, or complete and permanent insanity. Such external manifestations of some person's having taken advantage of a grantor's weakness of mind must be demonstrable by evidence.
Generally, the burden of proving lack of mental capacity rests upon the party asserting such lack. This is because of the presumption that a deed when properly executed[1] was executed by a person with the requisite mental capacity to execute such deed. The smooth functioning of day-to-day business routine requires this degree of certainty. As our opinions have frequently observed, not even a court of equity should protect a person from merely an improvident decision. See Herrington v. Herrington, supra.
As stated in Gillis v. Smith, supra, we are reluctant to overturn a chancellor on a question of fact, but here reversal is required because his finding of incapacity is against the overwhelming weight of the testimony. In view of the fact that no direct evidence was put on by the appellees of grantor Parks' mental incapacity at the time she executed the deed, combined with the appellants' evidence, consisting of the testimony of four witnesses actually present at the time of the execution of the deed, we cannot affirm the lower court's decree.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER, P.J., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
NOTES
[1] Here appellees did not cross-appeal from the lower court's adjudicating that the deed was properly executed as to notarization, etc.