# IN THE COURT OF APPEALS 04/08/97

# OF THE

# STATE OF MISSISSIPPI

## NO. 94-CA-00585 COA

EARNESTINE J. PARKER

APPELLANT

v.

LUDORA JONES

APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. HARRIS SULLIVAN

COURT FROM WHICH APPEALED: CHANCERY COURT OF COVINGTON COUNTY

ATTORNEY FOR APPELLANT:

MARY K. BURNHAM

ATTORNEY FOR APPELLEE:

DAVID P. OLIVER

NATURE OF THE CASE: DEEDS & CONVEYANCES -- UNDUE INFLUENCE -- LACK OF MENTAL CAPACITY TO EXECUTE

TRIAL COURT DISPOSITION: GRANTOR POSSESSED REQUISITE MENTAL CAPACITY TO EXECUTE DEED AND CONVEYANCE FOUND TO BE FREE OF UNDUE INFLUENCE

MANDATE ISSUED: 9/5/97

EN BANC

COLEMAN, J., FOR THE COURT:

Earnestine J. Parker filed suit in the Chancery Court of Covington County to set aside a conveyance of real property from her father, Earnest Jones, to his wife, Ludora Jones. The chancellor entered judgment in favor of the defendant, Ludora. The chancellor found that at the time of the conveyance Earnest possessed the requisite mental capacity to execute a deed validly, and that no confidential relationship existed between Ludora and Earnest. Aggrieved by the chancellor's ruling, Earnestine appeals to this Court on the following grounds:

> I. THAT THE HONORABLE HARRIS SULLIVAN, PRESIDING CHANCELLOR FOR THE LOWER COURT ERRED IN NOT SETTING ASIDE THE TWO DEEDS WHICH WERE PRESENTED AT TRIAL IN THAT THE GRANTOR DID NOT HAVE THE PRE-REQUISITE MENTAL CAPACITY TO EXECUTE THE SAME AND THAT SAID CHANCELLOR ERRED IN NOT RESCINDING AND GRANTING THE RELIEF SO PRAYED FOR BY THE PLAINTIFF, EARNESTINE J. PARKER.

> II. THAT A CONFIDENTIAL RELATIONSHIP EXISTED BETWEEN THE GRANTOR AND GRANTEE AND THAT THE GRANTEE WAS IN A POSITION TO ABUSE THE TRUST WHICH THE GRANTOR HAD IN HER.

Finding these assignments of error lacking merit, we affirm the judgment of the chancellor.

## FACTS

On or about January 1, 1993 Earnest Jones had been hospitalized for several weeks to receive treatment for his lung cancer. After announcing that he desired to make a will conveying all of his assets to his wife of forty-five years, Ludora, Earnest asked a nurse to call a social worker to his room. Earnest told the social worker that he wished to make a will and asked the social worker to assist him in locating an attorney who would draft legal documents to effectuate his wishes. After some discussion Earnest decided that he would like to employ the Honorable Joe Warren, a State Representative and local attorney. On January 7, 1993 Warren visited Earnest and his wife in Earnest's hospital room. After questioning Earnest about his assets and how he wanted to dispose of them, Warren concluded that Earnest could best accomplish his goals by executing a deed conveying his real property to himself and his wife, as joint tenants with right of survivorship and not as tenants in common. The property was, at that time, held in Earnest's name only. Warren explained that such a conveyance would, upon Earnest's death, pass the real property to Ludora as the sole owner. Earnest agreed with Warren's suggestion and directed the attorney to prepare the necessary instruments.

On January 16, 1995 Warren returned to Earnest's hospital room with the deeds that he had prepared. Warren again explained to Earnest the effect of the deeds, witnessed Earnest sign the instruments, and then notarized them. At all times relevant to this transaction the grantee, Ludora, was present in Earnest's hospital room. After the instruments were signed and notarized, Warren

took them to the Covington County Chancery Clerk's office where they were filed in the county land records. After Earnest's death his estranged daughter, Earnestine, whom he had seen on only three or four occasions over the preceding thirty-eight years, learned of the conveyances and sought to have them set aside. Earnestine was Earnest's child from a previous marriage and was not related to Ludora. It is from the chancellor's denial of Earnestine's prayer for relief that this appeal arises.

ANALYSIS

I. THAT THE HONORABLE HARRIS SULLIVAN, PRESIDING CHANCELLOR FOR THE LOWER COURT ERRED IN NOT SETTING ASIDE THE TWO DEEDS WHICH WERE PRESENTED AT TRIAL IN THAT THE GRANTOR DID NOT HAVE THE PRE-REQUISITE MENTAL CAPACITY TO EXECUTE THE SAME AND THAT SAID CHANCELLOR ERRED IN NOT RESCINDING AND GRANTING THE RELIEF SO PRAYED FOR BY THE PLAINTIFF, EARNESTINE J. PARKER.

Earnestine alleges that Earnest lacked the requisite mental capacity to execute the deeds by which he made his wife a joint tenant in his real property holdings. In reviewing this assignment of error we are mindful that in seeking to set aside a facially valid and recorded deed, the challenging party bears the burden of proof. Where the challenger asserts lack of mental capacity to execute a deed his burden becomes one of proving his point by clear and convincing evidence. *Richardson v. Langley*, 426 So. 2d 780, 783 (Miss. 1983). A facially valid deed is rebuttably presumed to have been executed with the requisite mental capacity. *Mullins v. Ratcliff*, 515 So. 2d 1183, 1190 (Miss. 1987). The grantor's mental capacity is to be measured as of the time of the execution of the deed. *Mullins,* 515 So. 2d at 1190. Lack of mental capacity, or "mental incapacity," requires proof of a total lack of mental capacity on the part of the grantor. *Richardson,* 426 So. 2d at 783. As the Mississippi Supreme Court has stated, "[t]he mental capacity of an individual to execute a deed is a nebulous and ethereal quality and at best present presents an extraordinarily difficult question for judicial determination." *Id.* Inevitably, such cases turn on the facts. *Mullins,* 515 So. 2d at 1185.

The chancellor found that Jones possessed the requisite mental capacity to execute the deeds in question. Adhering to our familiar standard of review, this Court will not reverse a chancery court's factual findings unless the chancellor is manifestly in error or his findings are not supported by substantial evidence. *Whitworth v. Kines*, 604 So. 2d 225, 228 (Miss. 1992). Restated, "this Court ought and generally will affirm a trial court sitting without a jury on a question of fact unless, based on substantial evidence, the court be manifestly wrong." *UHS-Qualicare, Inc. v. Gulf Coast Community Hosp., Inc.*, 525 So. 2d 746, 753-54 (Miss. 1987). In the case at bar the chancellor heard the testimony of several witnesses, all of whom were present at the hospital during various stages in the development of the facts at issue. All of the eyewitnesses testified that Earnest indicated to them that he wished for his wife, Ludora, to inherit his property, and that his mind seemed to be "perfectly clear" and that he "knew what he was doing." Among the witnesses were both the nurse and social worker whom Jones asked to help him locate an attorney, in addition to the attorney. The witnesses put on by Ludora all stated that they felt Earnest to be "alert" and in a "good state of mind" at all times pertinent to this analysis.

In attempting to prove that Earnest suffered from a lack of mental capacity Earnestine relies heavily

on the fact that Earnest was a dying man, and under the influence of numerous forms of medication during the time period in question. Earnestine's sole witness (other than herself) was Dr. William J. George, a pharmacist with a doctorate degree in pharmacology and having expertise in toxicology. Ludora attempted to use Dr. George's testimony to demonstrate that the drugs Earnest was under the influence of diminished his mental capacity. The most conclusive testimony, however, that Dr. George could provide was his opinion that the drugs would have impacted Earnest's "ability to think clearly" and might have "impaired" Earnest. Dr. George never actually observed Earnest during the period in question; his testimony was derived solely from a review of Earnest's hospital records. On the other hand, all of Ludora's witnesses were present at the hospital and observed Earnest during the time frame in question. Because Earnestine never visited Earnest during his illness, she was unable to offer any first-hand observations as to his actions or conversation during this period.

The Mississippi Supreme Court has previously addressed the issue of the mental capacity of a grantor who is under the influence of medication. *See Richardson v. Langley*, 426 So. 2d 780, 781-82 (Miss. 1983) (reversing chancellor's conclusion that drugs taken by rheumatoid arthritis patient rendered her without mental capacity to execute deed); *Herrington, v. Herrington*, 98 So. 2d 646, 748 (Miss. 1957) (holding that grantor who had been taking powerful narcotic, for pain caused by terminal cancer, possessed mental capacity to execute deed). Both of these cases looked to the grantor's actions and conversation during the time in question as the primary indicia of mental capacity or lack thereof, rather than the fact that the grantor was under the influence of medication. Under the facts of the instant case, all the witnesses who had an opportunity to observe Earnest's actions and conversation during the events at issue testified that they thought that his ability to comprehend and think was unimpaired. Earnest's attorney, Joe Warren, testified that he felt that Earnest knew the consequences of his actions and that he knew that by executing the deeds he was disinheriting his daughter. Considering all the testimony, and particularly the absence of any conflict in the eyewitness' accounts of Earnest's behavior, this Court is without power to disturb the chancellor's finding that Earnest was mentally competent to execute the deeds in question.

> II. THAT A CONFIDENTIAL RELATIONSHIP EXISTED BETWEEN THE GRANTOR AND GRANTEE AND THAT THE GRANTEE WAS IN A POSITION TO ABUSE THE TRUST WHICH THE GRANTOR HAD IN HER.

Earnestine argues that the chancellor's conclusion that no confidential relationship existed between Ludora and Earnest was in error. In reviewing this assignment of error, we must consider that a confidential relationship "arises when a dominant, overmastering influence controls over a dependent person or trust justifiably reposed." *Mullins v. Ratcliff*, 515 So. 2d 1183, 1191-92 (Miss. 1987). In order to establish the existence of a confidential or fiduciary relationship the burden of proof lies on the party asserting it. *Mullins*, 515 So. 2d at 1192. When a confidential relationship has been established, a presumption of undue influence arises. The burden then shifts to the grantee to show by clear and convincing evidence that there was no undue influence. *Kelly v. Shoemake*, 460 So. 2d 811, 819-20 (Miss. 1984).

In the present case, the chancellor had before him the testimony of several eyewitnesses who testified that Ludora "sat quietly" in the room while Earnest detailed his wishes to his lawyer. Furthermore,

the witnesses testified that on the occasions when they were in Earnest's room and he brought up the subject of disposing of his property, Ludora never commented or made any contribution to the conversation. In fact, the only testimony indicating that Ludora ever voiced an opinion on this issue came from her own mouth, when she testified that she once suggested to Earnest that he wait until after his discharge from the hospital to make a will. Ludora stated that Earnest rejected her suggestion that he wait to make a will, insisting that he wanted to go ahead and execute the deeds. Ludora also testified that Earnest brought up the subject of making a will about a year before he went into the hospital, but that he never got around to it.

Adhering to our familiar standard of review, this Court will not reverse a chancery court's factual findings unless the chancellor is manifestly in error or his findings are not supported by substantial evidence. *Whitworth v. Kines*, 604 So. 2d 225, 228 (Miss. 1992). Because Earnestine failed to put on any evidence that Ludora exercised a dominant, overmastering influence over Earnest, we are confident that not only was the chancellor's factual determination supported by substantial, credible evidence, but it was absolutely correct under the facts at bar. Accordingly, this assignment of error must fail.

**THE JUDGMENT OF THE CHANCERY COURT OF COVINGTON COUNTY IS AFFIRMED. COSTS ARE ASSESSED AGAINST APPELLANT.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., DIAZ, HERRING, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**