821 So.2d 903 (2002)
In the Matter of the CONSERVATORSHIP OF Arthur R. MORAN.
Daphne Barrios, Reggie Barrios and Alden R. Morgan, Appellants,
v.
Regina C. Necaise and Garrie D. Necaise, Appellees.
No. 2001-CA-00532-COA.
Court of Appeals of Mississippi.
July 16, 2002.
*904 William W. Dreher, Jr., Gulfport, attorney for appellants.
Ronald J. Artigues, Jr., Waveland, attorney for appellees.
Before SOUTHWICK, P.J., BRIDGES, and BRANTLEY, JJ.
SOUTHWICK, P.J., for the court.
¶ 1. Arthur R. Moran conveyed two tracts of land to his daughter, Regina C. Necaise. Other relatives brought suit, claiming that Moran was not mentally competent when he executed the deeds or that undue influence was used to obtain them. From a decision upholding the deeds, the other relatives appeal. There was sufficient evidence to support the chancellor's decision. We affirm.

*905 STATEMENT OF FACTS
¶ 2. Arthur Moran conveyed to his daughter Regina Necaise two tracts that became the focus of this litigation. They were contiguous blocks in the Clearmont Highlands Subdivision in Hancock County, Mississippi, being Blocks 20 and 21. They were conveyed in 1997 and 1995, respectively. Moran is now deceased, having died while this case was pending on appeal. In his will, executed in 1986 before any doubts about mental competence existed, Moran provided that Block 21 would be devised to Regina Necaise. The appellants have abandoned any claim to that land. Block 20 was under the will devised to the appellant Alden Moran and to Alden's sister Wilma, who died in 1997.
¶ 3. Arthur Moran was in his late eighties at the time of the trial. In addition to other ailments, Moran suffered from Alzheimer's disease. The uncertain evidence on when the disease became sufficiently advanced as to render him incompetent will be discussed below. In February 1998, the chancery clerk was appointed as conservator to manage Moran's affairs.
¶ 4. Moran conveyed Block 20 to his daughter Regina Moran Necaise on October 17, 1997. Mrs. Necaise testified that her father on his own initiative decided to make this conveyance; she did not coax him. Necaise believed that her father wanted her to have this parcel of land because it was directly in front of and adjoining the other tract that he had deeded to her in 1995. Under his direction, Mrs. Necaise had the deed prepared by a local attorney, Gerald Gex.
¶ 5. Attorney Gex testified that because Arthur Moran was advanced in age, he interviewed Moran outside the presence of Mrs. Necaise prior to preparing the deed, to determine if he understood the nature and consequences of the conveyance as well as to assure that he was acting independently of any outside influences. In Gex's opinion, on the date of the deed, Moran was lucid, acting under his own free will, and able to understand the nature and results of his actions.
¶ 6. Mary Beth Arnold, who was Gex's legal secretary and the notary public on the 1997 deed, stated that before Moran signed the deed, she ascertained that he was lucid and acting voluntarily. Arnold based this determination on a conversation that she had with Moran of approximately ten to fifteen minutes in length. This conversation occurred outside the presence of any other person. On the day that Moran executed the deed, he had an injured leg, which prevented him from getting out of Necaise's vehicle. Arnold went out to the car to have Moran execute the deed. Arnold testified that she and Moran were alone when he signed the deed and that she had no doubt that he was aware of his actions.
¶ 7. The three plaintiffs in this litigation are Daphne Barrios and Reggie Barrios, who are Arthur Moran's grandchildren, and Arthur's brother, Alden Moran. Daphne Barrios's mother, Wilma Barrios, was Moran's primary care giver until she died in August of 1997. After that time, Daphne had the responsibility of Moran's care. Shortly after Wilma Barrios's death, home health care personnel advised the family that Arthur Moran needed constant supervision.
¶ 8. Daphne Barrios testified that for a two-week period prior to Moran's coming to live with her, that Mrs. Necaise stayed with Moran. There was conflicting testimony as to exactly what time period this two week visit encompassed. Both of the plaintiff-grandchildren stated that it was during his stay with Mrs. Necaise that Moran deeded Block 20 to her.
*906 ¶ 9. Dr. Irene Koskan, who was Moran's physician for more than a decade, provided testimony by way of a deposition. Dr. Koskan stated that she first diagnosed Moran as having Alzheimer's in 1997. She described his then-current mental state at the time of the 2000 deposition as confused and disoriented. Further, she testified that Moran's mental condition had progressively diminished over the previous five years. She believed that the stress of losing two close family members had accelerated the effects of Alzheimer's on Moran. Dr. Koskan stated that she examined Moran in February and in December of 1997, and he was confused and agitated on both dates. She did not state that he was incompetent to understand the execution of a deed, however.
¶ 10. After a hearing in January 2001, the chancellor upheld the deed to Block 20. Daphne Barrios, Reggie Barrios and Alden Moran appeal.

DISCUSSION

I. Mental Capacity
¶ 11. A properly executed deed carries with it a presumption that the grantor was mentally competent at the time of execution. Richardson v. Langley, 426 So.2d 780, 786 (Miss.1983). To show otherwise requires clear and convincing evidence. In re Estate of Green, 755 So.2d 1054, 1055 (Miss.2000). It is not enough to show that at the time of the conveyance the grantor was suffering from a general mental weakness or condition; mental incapacity and insanity are not always permanent and a grantor may experience a lucid interval when he would possess the mental capacity to understand the legal consequences of his actions. Whitworth v. Kines, 604 So.2d 225, 228 (Miss.1992). It must be shown that, at the moment of execution, the grantor lacked the required mental capacity or was permanently insane. Id. at 229.
¶ 12. The deed was executed on October 17, 1997. Medical testimony was presented from Dr. Koskan that she examined Moran twice in 1997, once in February and again in December. Her notes revealed that he was confused and agitated on those dates. There was no testimony from Dr. Koskan, or any other source, that would establish that Moran was mentally incompetent on the date he executed the deed. Dr. Koskan's testimony did not provide a specific date as to when Moran was diagnosed with Alzheimer's.
¶ 13. Conversely, there was testimony from the attorney and a secretary who participated in the preparation and execution of the deed that Moran appeared competent at that time to them.
¶ 14. The chancellor found insufficient evidence of mental incapacity. A chancellor's fact-findings will be upheld absent manifest error or the lack of substantial evidence to support them. Whitworth v. Kines, 604 So.2d at 228. We find substantial evidence and no manifest error.

II. Weakness of Intellect
¶ 15. Even if Moran were not completely incompetent, the plaintiffs argue that he suffered from a weakness of intellect. Such a weakness, when coupled with some other factor such as grossly inadequate consideration or the existence of a confidential relationship, may lead to setting aside a deed. In re Estate of Green, 755 So.2d at 1055.
¶ 16. Confidential relationship. A confidential relationship exists "when a dominant over-mastering influence controls over a dependent person or trust, justifiably reposed." In Re Estate of Dabney, 740 So.2d 915, 919 (Miss.1999). The following factors must be considered:

*907 (1) whether one person has to be taken care of by others, (2) whether one person maintains a close relationship with another, (3) whether one person is provided transportation and has their medical care provided for by another, (4) whether one person maintains joint accounts with another, (5) whether one is physically or mentally weak, (6) whether one is of advanced age or poor health, and (7) whether there exists a power of attorney between the one and another.
Id. The chancellor made specific findings of fact to support his conclusion that no confidential relationship existed. Among the matters relied upon were these:
(1) Moran was alert and in good spirits when the deed was executed;
(2) Moran drove his own car (though perhaps not far), and handled his finances;
(3) Moran eventually became dependent but not upon Regina Necaise; instead, he depended upon the appellant Daphne Barrios;
(4) Mrs. Necaise was not given any authority over bank accounts, or to handle his finances.
¶ 17. What the chancellor faced was conflicting testimony and an elevated evidentiary standard of clear and convincing proof of a confidential relationship. The chancellor analyzed the Dabney factors and made reasonable and explicit findings of fact to support that no confidential relationship existed between Mrs. Necaise and Moran. We find no manifest error in the findings.
¶ 18. Inadequate consideration. Weakness of intellect that does not fall to the level of incompetence may still invalidate a conveyance if inadequate consideration existed. Love and affection will suffice as consideration. Holmes v. O'Bryant, 741 So.2d 366, 370 (Miss.Ct.App. 1999). That a father would wish to give land to his daughter is not unreasonable, though we accept that other and perhaps equally beloved family were thereby provided less. "A man of sound mind may execute a will or a deed from any sort of motive satisfactory to him, whether that motive be love, affection, gratitude, partiality, prejudice, or even a whim or caprice." Herrington v. Herrington, 232 Miss. 244, 250-51, 98 So.2d 646, 649 (1957) (quoting Burnett v. Smith, 93 Miss. 566, 47 So. 117, 118 (1908)).
¶ 19. Moran may have suffered from weakness of intellect. That standing alone, and we find that it did stand alone, is insufficient here. In re Estate of Green, 755 So.2d at 1055.

III. Undue Influence
¶ 20. The plaintiffs argue that Regina Necaise used undue influence on Mr. Moran. This is defined as an "improper use of power or trust in a way that deprives a person of free will and substitutes another's objectives." BLACK'S LAW DICTIONARY, 1529 (Bryan A. Garner ed., 7th ed., West 1990). There is a presumption of undue influence where a confidential or fiduciary relationship is shown to exist between a grantor and grantee. Vega v. Estate of Mullen, 583 So.2d 1259, 1263 (Miss.1991).
¶ 21. We have already upheld the chancellor's finding that no confidential relationship existed. The chancellor was concerned that Mrs. Necaise had been actively involved in the procuring of the deed, but determined ultimately that these circumstances were "adequately explained."
¶ 22. We find substantial evidence to support that undue influence did not arise from the assistance that Regina Necaise provided to Mr. Moran in having the deed prepared and executed.
*908 ¶ 23. The chancellor had to determine whether Mr. Moran was mentally incompetent or had been improperly influenced when executing the 1997 deed. There was inconclusive evidence on which inferences had to be drawn. Perhaps largely relying on the burden of proof, the chancellor found that insufficient evidence was presented to cause the setting aside of the deed. In this family dispute, it is likely that whatever conclusion was reached would not have been accepted as fair by the unsuccessful party. We are one step removed from the presentation of evidence and must give deference to the fact-finder regarding the evidence. We find no basis for reversal.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF HANCOCK COUNTY IS AFFIRMED. ALL COSTS ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.