927 So.2d 756 (2005)
Ernest Glenn LANCASTER, Linda Jean Lancaster Dykes, Helen Elaine Lancaster Stevens and Cynthia Renee Lancaster Dugas, Appellants.
v.
Robert Kendrick BOYD, Appellee.
Nos. 2004-CA-00306-COA, 2001-CA-00187-COA.
Court of Appeals of Mississippi.
November 29, 2005.
Rehearing Denied May 2, 2006.
*757 Derek E. Parker, Yazoo City, attorney for appellants.
Samuel H. Wilkins, Kyle Bond Ainsworth, Jackson, attorneys for appellee.
EN BANC.
CHANDLER, J., for the Court.
¶ 1. Ernest Lancaster and Robert Boyd were close friends for more than twenty years. Lancaster suffered from prostate cancer and a broken hip and resided in Boyd's home after he was released from the hospital. While he was living in Boyd's home, Lancaster conveyed sixty-one acres of land to Boyd. Lancaster's children learned of the property transfer after Lancaster's death and filed a motion to set aside the deed, which the Yazoo County Chancery Court denied. Lancaster's *758 children appealed, and this Court reversed and remanded. On remand, a different chancellor denied the Lancaster children's motion to set aside the deed. Lancaster's children appeal again, raising the following issues:
I. WHETHER THE CHANCELLOR ERRED IN FINDING THAT BOYD HAD OVERCOME THE PRESUMPTION OF UNDUE INFLUENCE
II. WHETHER LANCASTER WAS COMPETENT TO EXECUTE THE PROPERTY TRANSFER
III. WHETHER THE DEED SHOULD BE SET ASIDE FOR LACK OF CONSIDERATION
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Robert Boyd and Ernest Lancaster were close friends for twenty-two or twenty-three years, until Mr. Lancaster died on March 1, 1998. Lancaster purchased a mobile home which was situated on a piece of property owned by Boyd. Lancaster did not pay Boyd rent for the property where the mobile home was situated. Boyd estimated that he stayed at Lancaster's mobile home approximately seventy-five to eighty percent of the time. Lancaster worked in the convenience store owned by Boyd located next to the mobile home. Boyd did not pay Lancaster wages, but Lancaster received all of his groceries, gas, cigarettes, and utilities from the store free of charge. For a period of ten years, Boyd had authority to write checks on Lancaster's bank accounts, and Lancaster had the authority to write checks on the store account.
¶ 4. Lancaster was hospitalized from December 9 to December 22, 1997, with a broken hip and prostate cancer. During the period of hospitalization, Lancaster's children and Boyd rotated times staying with him at the hospital. When Lancaster was released, he stayed in Boyd's home in Florence, Mississippi. Lancaster's children continued to visit with Lancaster and occasionally stayed overnight.
¶ 5. On December 30, 1997, Lancaster executed a warranty deed conveying sixty-one acres of land in Yazoo County to Boyd. Boyd's attorney prepared the warranty deed, at Boyd's request, after Boyd obtained the legal description of the property. Boyd testified that Lancaster had been discussing granting the property to Boyd for two or three years prior to the transaction, and Lancaster instructed Boyd to obtain the legal description of the land so that he could execute the transfer of property.
¶ 6. Sammy Ainsworth, Vice President/Branch Manager for the Trustmark Bank of Florence, notarized the signature to the warranty deed. It was his testimony that Lancaster knew and appreciated what he was doing.
¶ 7. Elaine Stevens, one of Lancaster's daughters and one of the appellants, testified that her father was ordinarily diligent about keeping his financial affairs in order and knew what property he owned. However, the deed from Lancaster to Boyd contained property that Lancaster had sold to Elaine and her husband in 1975. Stevens testified that if her father knew what he was doing when he transferred the deed to Boyd, he never would have executed a deed that included property that he did not own. Stevens also testified that the drugs her father was taking following the hospitalization made him drowsy and unaware of what was going on.
¶ 8. While Lancaster was staying at Boyd's home, he received an evaluation by a registered nurse, Cynthia Luby. Luby's evaluation was conducted on the same day the deed was executed and lasted for approximately one hour and a half. Luby noted that Lancaster was alert, but forgetful, *759 and was able to answer questions coherently. Luby further testified that Lancaster was knowledgeable about the medications he was taking and that he appeared to understand her questions and responded to her questions.
¶ 9. On May 15, 1998, Lancaster's children filed a complaint to set aside the warranty deed. The Yazoo County Chancery Court denied the complaint to set aside the deed. All parties agreed that a confidential relationship existed between Lancaster and Boyd, but Lancaster's children argued that Boyd had not presented sufficient evidence to rebut a presumption of undue influence. Following an appeal, we reversed and remanded on the grounds that the chancellor failed to shift the burden of proof to Boyd to prove that Lancaster was not unduly influenced once a confidential relationship was found. Lancaster v. Boyd, 803 So.2d 1285 (Miss.Ct.App. 2002).
¶ 10. On remand, the chancellor considered the three factors enumerated in Will of McCaffrey v. Fortenberry, 592 So.2d 52 (Miss.1991), to ascertain whether the presumption of undue influence was overcome. After considering these factors, the chancellor determined that Boyd had overcome the presumption of undue influence.

ANALYSIS

I. WHETHER THE CHANCELLOR ERRED IN FINDING THAT BOYD HAD OVERCOME THE PRESUMPTION OF UNDUE INFLUENCE
¶ 11. All parties agree that a confidential relationship existed between Boyd and Lancaster. Once it is determined that a confidential relationship exists in an inter vivos transaction, a rebuttable presumption of undue influence arises automatically. This presumption is rebuttable by clear and convincing evidence. Madden v. Rhodes, 626 So.2d 608, 619 (Miss.1993). In determining whether a presumption of undue influence has been rebutted, courts apply the three-prong test set forth in Will of McCaffrey v. Fortenberry, 592 So.2d 52 (Miss.1991). The three prongs are (1) that the grantee/beneficiary acted in good faith; (2) that the grantor had full knowledge and deliberation of his actions and the consequences of those actions; and (3) that the grantor exhibited independent consent and action. Id. at 60. See also Murray v. Laird, 446 So.2d 575, 578 (Miss.1984).

Good Faith
¶ 12. The Mississippi Supreme Court outlined five factors to consider in determining whether the grantee acted in good faith. These factors are (1) determination of the identity of the initiating party in seeking preparation of the instrument; (2) the place of the execution of the instrument and in whose presence; (3) the consideration and fees paid, if any; (4) by whom paid; and (5) the secrecy and openness of the execution of the instrument. Murray, 446 So.2d at 578.
¶ 13. All evidence showed that the execution of the warranty deed was prepared at Lancaster's request. There was no evidence that Lancaster ever intended to convey his property to his children or to anyone other than Boyd. Boyd testified that Lancaster had been discussing this conveyance for two or three years prior to the transaction. A chancellor is allowed to consider the testimony of the beneficiary in deciding whether the presumption of undue influence is rebutted. Arnold v. Dubose, 740 So.2d 979, 988 (¶ 44) (Miss.Ct.App.1999). Lancaster's children offered no evidence rebutting or refuting Boyd's testimony. In Fortenberry, the supreme court explained:
While the appellants argue that Fortenberry's testimony is laced with self serving *760 statements, we also note that nothing was offered by the appellants at trial to discredit the explanations which were furnished. While the burden is upon the "accused" to rebut the presumption of undue influence, once the alleged influencer has had his turn at bat, the ball then bounces back to the "accusers" for rebuttal.
Fortenberry, 592 So.2d at 62.
¶ 14. The deed conveying the property to Boyd was executed at Boyd's home. However, as noted by the chancellor, the deed was executed at a place where Lancaster was convalescing, and it is logical that a bedridden person with a broken hip would execute a deed in the place where he was recuperating. All of Lancaster's children were aware of, and approved, Lancaster's living arrangement with Boyd.
¶ 15. Sammy Ainsworth, the person who witnessed the execution of the deed and notarized the deed, testified that Lancaster knew and appreciated what he was doing. Ainsworth further testified that he had no recollection that Boyd was coercing Lancaster to sign the deed. Finally, Ainsworth testified that he would not have notarized Lancaster's signature if he believed Lancaster did not know what he was doing or appeared to be under the influence of drugs.
¶ 16. Boyd let Lancaster's children visit their father any time they wished. Lancaster's son Ernest testified that each of Lancaster's children would go to Boyd's house whenever they got off work and would stay with their father until late at night to take care of him. One of Lancaster's daughters spent the night at Boyd's house the night after the deed was executed. The deed was recorded on January 12, 1998, in the land records of the office of the Chancery Clerk of Yazoo County, Mississippi. Therefore, the deed was recorded before Lancaster's death. There is no evidence that the deed was executed in secrecy.

Grantor's Knowledge of His Actions
¶ 17. Three witnesses testified that Lancaster knew what he was doing when he signed the deed. Ainsworth, the witness who notarized the deed, testified that Lancaster knew what he was doing when he signed the deed. Cynthia Luby evaluated Lancaster on the day the deed was executed. She testified that he was alert, appeared to understand her questions, and gave coherent responses to her questions. While some of Lancaster's medications warned to avoid activity requiring alertness, Luby stated that Lancaster did not appear to be abusing his medication and was not sleepy or drowsy when she evaluated him. Amy Porter, who worked at Boyd's convenience store for seven years, testified that she visited Lancaster at Boyd's home. When asked if Lancaster would know what he was doing if he signed the deed, Porter stated, "If he signed it, he did." In describing Lancaster's mental capacity and susceptibility to being unduly influenced, she stated, "Mr. Ernest was sharp as a tack. He always was. He was on top of it. Mr. Ernest was sharp right up until the end."
¶ 18. Lancaster and Boyd were close personal friends for more than twenty years. Lancaster lived on Boyd's property rent-free, and the finances of the two men were commingled to such an extent that Boyd was on Lancaster's checking account and Lancaster had signatory authority on Boyd's store account. When Lancaster was released from the hospital, it was his preference to recuperate at Boyd's home. Given these facts, it was understandable that Lancaster would wish to convey the property to Boyd. While this Court has a duty to prevent a conveyance that was a product of undue influence, it *761 has an equal duty to uphold the intent of a person who is now deceased. Estate of McRae, 522 So.2d 731, 740 (Miss.1988).

Independent Consent and Action
¶ 19. Lancaster had been discussing conveying the property to Boyd for a period of two or three years. Ainsworth, Luby, and Porter all testified that Lancaster knew and appreciated the consequences of his actions. In addition, Lancaster's children testified that Lancaster had the capacity to make his own decisions, including the decision to move to Boyd's house. Lancaster's daughter Elaine Stevens testified as follows:
Q: All right. When he [Lancaster] was released from [the] VA and went to Bob's [Boyd's] house in December of 1997, do you know whose choice that was?
A: Well, I think he did decide he wanted to do that. But, you know, because we thought thatBob had wanted him to go down there, but also daddy [Lancaster] doesn't like a lot of noise and stuff.
Q: It was his decision to go to Bob's when he was released from the hospital?
A. Well, we kind of helped on the decision too, you know.
¶ 20. Boyd testified that the steps he took in helping to effect the deed transfer were at the instruction of Lancaster. Boyd testified that Lancaster instructed him to obtain a legal description of the property from the Yazoo County courthouse. This testimony was uncontradicted.

Conclusion
¶ 21. The chancellor considered each of the three factors as outlined in Fortenberry in deciding that Boyd had proven by clear and convincing evidence that the presumption of undue influence was overcome. We find that the chancellor's conclusion was supported by the record.

II. WHETHER LANCASTER WAS COMPETENT TO EXECUTE THE PROPERTY TRANSFER
¶ 22. The burden of proving lack of mental capacity rests upon the party asserting it, because the law presumes that a properly executed deed was executed by a person with such mental capacity to execute such a deed. Richardson v. Langley, 426 So.2d 780, 783 (Miss.1983). Clear and convincing evidence is necessary to establish this lack of mental capacity. Id. To set aside the deed, the court must find that the grantor suffered a weakness of intellect, plus another factor such as grossly inadequate consideration. Id.
¶ 23. Lancaster's children claim that their father lacked the capacity to execute the deed because the confidential relationship with Boyd, the pain he was experiencing after the surgery, and the narcotic drugs caused Lancaster to suffer a weakness of intellect. However, three witnesses who observed and evaluated Lancaster after his surgery testified that he was alert and knowledgeable. Lancaster's children did not present any proof that the medication their father was taking caused a defect of mind. The chancellor was correct in her finding that Lancaster was competent to execute the deed.

III. WHETHER THE DEED SHOULD BE SET ASIDE FOR LACK OF CONSIDERATION
¶ 24. Where the instrument in controversy contains a statement or recital of consideration, it creates a rebuttable presumption that consideration actually existed. Daniel v. Snowdoun Ass'n, 513 So.2d 946, 950 (Miss.1987). The rebuttal must be made by a clear preponderance of the evidence. Id. The subject deed begins *762 with the words, "For and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, receipt thereof is acknowledged."
¶ 25. The chancellor focused on the "other good and valuable consideration" given for the deed. Lancaster and Boyd were close friends for many years, and during Lancaster's illness, Boyd readily accepted him into his home and became his primary caregiver. Under Mississippi law, love and affection is valid consideration. Holmes v. O'Bryant, 741 So.2d 366, 370 (¶ 19) (Miss.Ct.App.1999). "A man of sound mind may execute a will or a deed from any sort of motive satisfactory to him, whether that motive be love, affection, gratitude, partiality, prejudice, or even a whim or caprice." Herrington v. Herrington, 232 Miss. 244, 250-51, 98 So.2d 646, 649 (1957). There was adequate consideration for conveyance of the deed.
¶ 26. THE JUDGMENT OF THE CHANCERY COURT OF YAZOO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE AND MYERS P.JJ., BRIDGES, GRIFFIS, BARNES, ISHEE, CONCUR. IRVING, J., CONCURS IN RESULT ONLY. KING, C.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.