990 So.2d 825 (2008)
Brandi McMAHAN, Appellant,
v.
Mona WEBB, Successor of Patricia Dianne Lyons, Conservator for Amy M. Mallette, Appellee.
No. 2006-CA-00373-COA.
Court of Appeals of Mississippi.
September 23, 2008.
*826 Holly Trudell, Richard B. Tubertini, Gulfport, attorneys for appellant.
Earl L. Denham, Kristopher Weiss Carter, Wendy C. Hollingsworth, Ocean Springs, attorneys for appellee.
Before KING, C.J., BARNES and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. In 2001, Amy Mallette deeded a parcel of land that she held as a sole tenant to her sister, Brandi McMahan, and to herself as tenants in common. A short time later, Brandi brought suit to partition the property between herself and Amy. Amy, through her conservator, Mona Webb, then counterclaimed to have the deed transferring the property from Amy to Amy and Brandi set aside on the ground that Amy was incompetent at the time the transfer was made.
¶ 2. After a four-day hearing on the matter, the chancery court set aside the deed, finding that Amy was mentally incompetent and that there was a gross lack of consideration given for the property's transfer. It is from this ruling that Brandi now appeals, asserting that either the chancellor erred in finding that Amy was mentally incompetent at the time the deed was executed, or the chancellor erred in finding that a gross lack of consideration was given for the transfer. Finding no error, we affirm the judgment of the chancery court.

FACTS AND PROCEDURAL HISTORY
¶ 3. Amy and Brandi are both daughters of Thomas Mallette, who died in March 2001. Shortly before Thomas's death, he deeded the subject property in this case to Amy without her knowledge. At the time of his death, Amy was dependent on her father for living expenses. Thomas also left trust funds for both Amy and Brandi, which were structured to begin paying out when the women reached the age of twenty-five. At the time of her father's death, Amy was almost twenty-three years old. Brandi was married to a husband with a good income, and she would turn twenty-five within a matter of months. Because Amy was not eligible for payments from her trust at the time her father died, and had no other source of income, Brandi offered to lend Amy money to cover her living expenses during the interval between Thomas's death and the time that Amy became eligible for payments from the trust. Amy would repay Brandi when she became eligible to receive payments from the trust.
¶ 4. Brandi's loan and Amy's obligation for repayment was established in a promissory note executed in June 2001. At the same time the promissory note was executed, Amy also executed a warranty deed conveying the property left to her by her father to Brandi and herself as tenants in common. Shortly after the promissory note and warranty deed were executed, Brandi brought suit to partition the property. Amy, through her conservator, answered, asserting that her mental incapacity rendered her unable to understand the nature and consequences of the conveyance; therefore, the deed should be set aside.
¶ 5. At the conclusion of a four-day trial in July 2005, the chancery court found that Amy lacked the mental capacity to understand the consequences of executing the *827 warranty deed and set aside the conveyance. The chancellor also found that, even if Amy could have understood the consequences of her actions, she would still be compelled to set aside the deed based on the weakness of intellect demonstrated by Amy, coupled with the gross lack of consideration given for the transfer of property.
¶ 6. The chancellor based her findings on, among other things, the testimony of Dr. John Stoudenmire. Dr. Stoudenmire testified that Amy's IQ was around seventy-five. He stated that this score placed her on the borderline of being classified as mentally retarded, and that Amy's intellectual ability would remain at or below its current level for the rest of her life. As a consequence of these impairments, Dr. Stoudenmire testified that Amy could not have understood the legal consequences of signing the warranty deed, which conveyed the subject property in this case from Amy to Amy and Brandi as tenants in common.

STANDARD OF REVIEW
¶ 7. We will not disturb a chancellor's findings of fact unless they are manifestly wrong, clearly erroneous, or if an erroneous legal standard was applied. Wright v. Roberts, 797 So.2d 992, 997(¶ 14) (Miss. 2001). So long as the chancellor's decision was supported by substantial, credible evidence, the decision will not be disturbed. Id. We do not substitute our own judgment for that of the lower court, even if we disagree with the chancellor's findings of fact or might have come to a different conclusion. Owen v. Owen, 798 So.2d 394, 397-98(¶ 10) (Miss.2001) (citations omitted).

DISCUSSION
¶ 8. It is presumed that the grantor of a properly executed deed was mentally competent at the time of its execution. In re Moran, 821 So.2d 903, 906(¶ 11) (Miss.Ct.App.2002) (citation omitted). Generally, in order to set aside a deed in this state, it must be shown by clear and convincing evidence that the grantor lacked the mental capacity at the moment of execution to understand the legal consequences of his or her actions. Id. (citation omitted).
¶ 9. In Mississippi, three ways exist to establish the mental incapacity of a person to execute a deed. These are: (1) establishing that the grantor suffered from a total lack of capacity to execute the deed (i.e., that the grantor did not understand the legal consequences of his or her actions); (2) establishing that the grantor suffered from a general "weakness of intellect" coupled with either (a) inadequate consideration given for the transfer or (b) a confidential relationship between the grantor and grantee; or (3) establishing that the grantor suffered from permanent insanity up to and after the date of execution. Smith v. Smith, 574 So.2d 644, 653-54 (Miss.1990).
¶ 10. In this case, the chancellor received testimony from Dr. Stoudenmire in which he stated that Amy is borderline mentally retarded. Dr. Stoudenmire testified that Amy's intellectual ability is around that of a seventh-grader, and she will remain at or below that level for the rest of her life. Finally, Dr. Stoudenmire testified that, as a result of her mental impairments, and to a reasonable degree of psychological certainty, Amy could not have understood the legal consequences of signing the warranty deed. The testimony of Dr. Stoudenmire was not refuted by Brandi during the trial. Additionally, the chancellor also received testimony from several lay witnesses who provided evidence of Amy's low intelligence and childlike behavior.
¶ 11. Brandi argues that Dr. Stoudenmire testified only as to Amy's competency to manage funds, and that he did not give an opinion as to her ability to understand *828 the legal consequences of signing the warranty deed. A review of the record reveals that this was not the case. Dr. Stoudenmire did, in fact, make an unequivocal statement that based on his expertise, he did not believe Amy could understand the legal consequences of signing the warranty deed. Brandi further argues that the chancellor applied an erroneous legal standard in finding that Amy could never experience a lucid interval. This argument has no merit. The statements by Dr. Stoudenmire clearly indicate that Amy's mental impairments do not wax and wane over time. Her mental impairments are permanent, and if anything, her condition will only get worse over time. Therefore, the chancellor was correct when she found that Amy could not experience a lucid interval and could not have understood the effect of signing the warranty deed conveying the subject property to herself and Brandi as tenants in common.
¶ 12. Based on the foregoing, we find that the chancellor applied the correct legal standard in setting aside the conveyance. The chancellor was not manifestly wrong in finding that Amy was mentally incompetent and, therefore, unable to understand the legal consequences of her actions when she signed the warranty deed. Accordingly, we affirm the judgment of the chancellor.
¶ 13. THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR.